# Exhibit A

 **Todd&Weld** LLP

Christopher R. O'Hara
E-mail: cohara@toddweld.com

March 14, 2019

*Via Certified Mail*
*RETURN RECEIPT REQUESTED*

Glenn Haegle
11917 Frost Aster Drive
Riverview, FL 33579

      Re:    *Eliassen Group, LLC, et al. v. Jayne Gill, et al.*
               *U.S. District Court Civil Action No. 1:19-CV-01470-GAO*

Dear Mr. Haegle:

      This firm represents Plaintiffs Eliassen Group, LLC and EG Life Sciences LLC in connection with a lawsuit commenced against you in the United States District Court for the District of Massachusetts.

      I enclose a copy of the Summons and Complaint filed against you in the United States District Court for the District of Massachusetts.  Service is hereby being made upon you in accordance with Fed. R. Civ. P. 4(e)(1) and Mass. R. Civ. P. 4(e)(3).

      Please be advised that the service of the Summons and Verified Complaint obligates you to file an answer and/or otherwise respond to the Verified Complaint within 21 days after the service of the Summons and Verified Complaint.

               Very truly yours,

               Christopher R. O'Hara

CRO'H:cas
Enclosures (Summons and Verified Complaint and Jury Demand)



U.S. Postal Service™
CERTIFIED MAIL® RECEIPT   CROH
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)    $
☐ Return Receipt (electronic)  $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required     $
☐ Adult Signature Restricted Delivery  $

Postmark
Here

MAR 14 2019

Postage
$

Total Postage and Fees
$

Sent To  Glenn Haegle
Street and Apt. No., or PO Box No.  11917 Frost Aster Drive
City, State, ZIP+4®  Riverview, FL 33579

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7018 1830 0001 6471 3912

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ELIASSEN GROUP, LLC, ET AL.** | |
| *Plaintiff* | |
| v. | Civil Action No.: |
| | **1:19−CV−10470−GAO** |
| **JAYNE GILL, ET AL.** | |
| *Defendant* | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

> Glenn Haegle
> 11917 Frost Aster Drive
> Riverview, FL 33579

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) —— or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) —— you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Christopher R. O'Hara, Esq.
> Todd & Weld LLP
> One Federal Street, 27th Floor
> Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

*CLERK OF COURT*

/s/ − **Christina McDonagh**

*Signature of Clerk or Deputy Clerk*

ISSUED ON 2019−03−14 09:07:17.0, Clerk USDC DMA

Civil Action No.:  **1:19−CV−10470−GAO**

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____ on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____ , a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :

My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.

_____                    _____
Date                                                      *Server's Signature*

                                                           _____
                                                           *Printed name and title*

                                                           _____
                                                           *Server's Address*

Additional information regarding attempted service, etc:

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ELIASSEN GROUP, LLC and<br>EG LIFE SCIENCES LLC,<br><br>    **Plaintiff,**<br><br>**v.**<br><br>JAYNE GILL and GLENN HAEGLE,<br><br>    **Defendants.** | Civil Action No. _____ |

## VERIFIED COMPLAINT AND JURY DEMAND

### Introduction

1.  The Plaintiffs, Eliassen Group, LLC ("Eliassen Group" or "EG") and EG Life Sciences LLC ("EG Life Sciences" or "EGLS") (collectively as "Eliassen"), bring this action seeking damages and injunctive relief against two former employees, Defendants Jayne Gill ("Ms. Gill"), who worked for Eliassen for over eight (8) years, most recently as Sr. Director, Client Services, and Glenn Haegle (Mr. Haegle"), who had worked for Eliassen for over two years, most recently as a Client Services Manager, due to the Defendants' violations of the confidentiality provisions and the restrictive covenants contained in their respective Employment Agreements with Eliassen. Shortly before both Defendants quit their jobs with Eliassen on February 1, 2019, they made preparations to engage in such misconduct, and after their departure, they have engaged in such misconduct on behalf of their new employer, a direct competitor of Eliassen, using confidential Eliassen information to solicit Eliassen clients and employees, all in violation of their obligations.

Plaintiffs seek legal and equitable relief to prevent the immediate and irreparable harm that has resulted and that will continue to result from the Defendants' wrongful conduct, including injury to Plaintiffs' good will and confidential and/or proprietary business information as well as the financial harm that will result to their business if Defendants' wrongful conduct continues.

<u>**Parties**</u>

2.      Eliassen Group, LLC ("Eliassen Group") is a Delaware limited liability company with a principal place of business located at 55 Walkers Brook Drive, 6th Floor, Reading, MA, 01867, in Middlesex County, Massachusetts. Eliassen Group, LLC is the sole owner and manager of EG Life Sciences LLC, which was formed in 2015 to provide services to customers of Eliassen Group's Life Sciences Division.

3.      EG Life Sciences LLC ("EG Life Sciences" or "EGLS") is a Delaware limited liability company with a principal place of business located at 55 Walkers Brook Drive, 6th Floor, Reading, MA, 01867, in Middlesex County, Massachusetts.

4.      Defendant Jayne Gill ("Ms. Gill") is a former employee of Eliassen Group, LLC with a last known address at 11 Aspen Lane, Bedford, NH 03110. She worked in Eliassen's prior Massachusetts headquarters in Wakefield until 2017, and then in its Reading headquarters after Eliassen moved in 2017. Ms. Gill was an employee of Eliassen Group, LLC from the time she was initially hired in August 2010 through the day she resigned on February 1, 2019, and worked in its Life Sciences division beginning shortly after she was first employed with Eliassen Group.

5.      Defendant Glenn Haegle ("Mr. Haegle") is a former Client Service manager in Eliassen's EG Life Science's group with a last known address at 11917 Frost Aster Drive,

Riverview, Florida.  Mr. Haegle was an employee of Eliassen Group, LLC, working in its Life

Sciences division from the time he was initially hired in October 2016 through the day he

resigned on February 1, 2019.

## Jurisdiction and Venue

6.      This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C.

§1331 over Ms. Gill and Mr. Haegle in the claims asserted against them under Defend Trade

Secrets Act ("DTSA")(Counts III and V respectively).  Additionally, this Court has personal

jurisdiction and diversity subject matter jurisdiction over the two Defendants under the

remaining claims.

Additionally, this Court has diversity jurisdiction over both Ms. Gill and Mr. Haegle.

The matter at issue is well in excess of the diversity threshold of $75,000, exclusive of interest

and costs.  Ms. Gill and Mr. Haegle both have had substantial contacts with Eliassen Group and

EGLS within the Commonwealth of Massachusetts in connection with the performance of their

duties and responsibilities on behalf of Eliassen.  Ms. Gill worked in Eliassen Group and EGLS's

Massachusetts offices during her employment with Eliassen.  Mr. Haegle had substantial

contacts with the EGLS and Eliassen Group in connection with his employment at Eliassen.

Accordingly, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28

U.S.C. §1332.

## Factual Allegations

(i)      **Eliassen Group's and EG Life Sciences' Business**

7.      Eliassen Group and EG Life Sciences provide Information Technology ("IT")

staffing services and consulting services to corporate clients nationwide by filling positions with

highly qualified employees and independent contractors, referred to by Eliassen Group and

EGLS as "Consultants." Eliassen Group provides such services to a variety of industries, including financial services, manufacturing, and software development. EGLS provides such services to medical device, pharmaceutical and biotechnology companies.

8.    As part of its services, EG Life Sciences provides life science staffing and consulting in areas of quality (quality assurance and quality control), regulatory and compliance (regulatory submissions and filing, audit and regulatory observation, and inspection readiness), validation (process, software and equipment), engineering, project management from conception to execution, and biometrics (including statistical programming and analysis, biostatistics, and SDISC consulting and data standardization), among others.

9.    EG Life Sciences shares staffing and recruiting resources, organization, data, processes and techniques with Eliassen Group, using a local and national model of staffing based on telephone contacts and interviews to screen consultants and to place them at clients in biotech, pharmaceutical, and the medical devices industries.

10.    EGLS's technical recruiting organization is composed of career recruiters, averaging approximately ten years of technology recruiting experience, who are invested in the success of the candidates. Its recruiters often act as career counselors to candidates as they work with the candidates year-over-year, delivering personalized service.

11.    EGLS consistently uses a proprietary recruiting quality management process that includes rigorous telephone screening, in-person interviews for those consultants when possible, reference checking, and further screening services (e.g., security, bonding) as required by the client.

12.    EGLS's quality management recruiting model is an end-to-end process of identifying, qualifying, monitoring and retaining the best temporary technology talent for its

clients.  Its recruiting process is driven by continual feedback to determine that its consultants and clients are well-served.

13.     Eliassen has invested substantial time, money and human capital identifying, among other things, Client hiring managers who have the authority to recommend or contract for the hire of outside Consultants; understanding particular timing, needs, patterns, programs, systems and projects of Clients; understanding the rates that Clients are willing to pay for engineering and technical work force (as compared to other rates and services that competitors may provide); and developing extensive good will with Clients.

14.     Eliassen Group and EGLS identify and place highly skilled engineers and technical professionals, not readily available in local markets, with corporate Clients requiring temporary skilled assistance.  In this capacity, they service thousands of Clients and Consultants. Openings for temporary employees are not typically advertised publicly, but rather are filed directly by the hiring project manager requiring immediate assistance.  Eliassen Group and EGLS discover openings and place Consultants in a company by diligent interaction with Clients and Consultants through its Account Executives and Recruiters.  Throughout their many years in business, Eliassen Group and EGLS have developed strong relationships with their  Clients and Consultants.

15.     Eliassen spends considerable time and investments in training its Recruiters to work to identify, establish, cultivate and maintain relationships with Consultants the fill the needs of Clients in these areas.  Eliassen administers personal, intensive training to its recruiters through an established program, in which recruiters gain knowledge of Eliassen's techniques of Client and Consultant relations, marketing and solicitation to potential Consultants, presentations of candidates to Client employers and cultivating and maintaining relationships with existing

Consultants.  Eliassen provides its recruiters with leads and Consultant lists, which it keeps confidential.

16.     Eliassen has generated a substantial amount of goodwill by building, cultivating, supporting, and maintaining relationships between its recruiters and its Consultants.  The goodwill is enhanced and cultivated by Eliassen's marketing, training and support.

17.     Eliassen also has spent hundreds of thousands of dollars creating and maintaining a secure computer system in order to protect confidential and proprietary information, including job requirements/listings, Consultant lists, Consultant information, Client lists, Client information, and other confidential and proprietary information, to its recruiters, account managers and management staff.

18.     In order to protect these valuable assets, and for good and valuable consideration, Eliassen requires each of its recruiters, account executives and other employees to sign a confidentiality, non-disclosure, non-competition, and non-solicitation agreement upon the commencement of their employment.  In fact, all offers of employment made to applicants are conditioned upon their signing such an agreement.  Ms. Gill and Mr. Haegle both signed agreements containing confidentiality, non-competition and non-solicitation provisions at the outset of their employment.

(ii)    **Ms. Gill's and Mr. Haegle's Employment with Eliassen**

19.     In early August 2010, Eliassen hired Ms. Gill as Director of National Accounts.

20.     On August 5, 2010, in connection with the commencement of her employment with Eliassen, Ms. Gill signed an "Agreement Governing Non-Competition Confidential Information and Trade Secrets" (the "Gill Employment Agreement") with Eliassen.  A true and accurate copy of the Employment Agreement is attached hereto as ***Exhibit A***.

6

21.     Relying on the Employment Agreement, Eliassen subsequently made Ms. Gill its

Managing Director within its Life Sciences group.  In her role as Managing Director at EG Life

Sciences, Ms. Gill represented that she was responsible for staffing in the biotech,

pharmaceutical and medical device industries. In connection with her employment, Eliassen gave

her extensive access to EG Life Sciences' proprietary databases containing non-public

information concerning its Consultants and Clients.  Throughout her employment at Eliassen,

Ms. Gill also had access to, and received, a myriad of internal confidential information belonging

to Eliassen, including but not limited to client agreements, EG Life Sciences contracts, margins,

pricing, compensation plans and other Eliassen internal, confidential information.

22.     In October 2016, Eliassen hired Mr. Haegle to work in its Life Sciences group.

23.     On or about October 4, 2016, in connection with the commencement of his

employment with Eliassen, Mr. Haegle signed an "Agreement Governing Non-Competition

Confidential Information and Trade Secrets" (the "Haegle Employment Agreement") with

Eliassen.  A true and accurate copy of the Employment Agreement is attached hereto as ***Exhibit***

***B***.

24.     Relying on the Employment Agreement, Eliassen employed Mr. Haegle within

Eliassen's Life Sciences group.  In connection with his employment, Eliassen gave him

extensive access to EG Life Sciences' proprietary databases containing non-public information

concerning its Consultants and Clients.  Mr. Haegle was assigned pre-established Clients with

which he worked to fulfill their staffing needs.

25.     Both Ms. Gill's Employment Agreement and Mr. Haegle's Employment

Agreement include a restrictive covenant and/or noncompetition covenant that provides, in its

entirety:

7

1.    **Restrictive Covenant**

For so long as Employee is employed by Eliassen and for a period of eighteen (18) months after the termination of Employee's employment for any reason whatsoever, whether voluntarily or involuntarily, Employee shall not, without prior express written consent of Eliassen, directly or indirectly, whether as an employee, officer, trustee, consultant, owner, partner, co-venturer, agent, advisor or otherwise, on behalf of any "competing organization":  1) do business with or seek business from any persons, entities or corporations approached or solicited by Employee at any time during the eighteen (18) months prior to the termination of employment with Eliassen, and/or 2) do business with or seek business from any persons, entities or corporations located in any county in which Employee approached customers or solicited business at any time during the eighteen (18) months prior to the termination of employment with Eliassen. For purposes of this agreement, a "competing organization"" shall be any business involved in the same or substantially similar business as Eliassen or which competes in any way with the business of Eliassen, either directly or indirectly as a contractor or subcontractor. Employee further acknowledges that to the extent Employee is engaged in sales and/or dealings with customers, Employee develops substantial good will on behalf of Eliassen by dealing with customers. Such customer good will is, in all instances, the property of Eliassen.  Employee further acknowledges that any solicitation of customers in violation of this agreement would be misappropriation of customer good will to the substantial detriment of Eliassen.

*See* Gill Agreement ¶ 1 (***Ex. A***); *see also* Haegle Agreement, ¶ 1 (***Ex. B***).

26.    Both the Gill Employment Agreement and the Haegle Employment Agreement

include a non-solicitation clause that provides:

2.    **Non-Solicitation**

Employee agrees that he/she shall not, for a period of eighteen (18) months from the date his/her employment with Eliassen terminates, solicit any contract or award, or accept any contract or award for work, or perform any service individually or on behalf of any competing organization, on any project that Employee worked on any time during his/her Employment with Eliassen, Employee also agrees that he/she shall not solicit, recruit to work, or employ any consultant or employee of Eliassen in any capacity whatsoever, either directly or indirectly, for a period of eighteen (18) months after the Employee leaves the employment of Eliassen.

*See* Gill Employment Agreement ¶ 2 (***Ex. A***); *see also* Haegle Employment Agreement, ¶ 2 (***Ex. B***).

27.    Both Ms. Gill's and Mr. Haegle's Employment Agreement include a non-

disclosure clause that provides:

### 3.   Non-Disclosure and Return of Confidential Information and Trade Secrets

Employee agrees that during or after the term of his/her employment with Eliassen, he shall not at any time disclose to others or use for his/her own benefit any trade secrets or confidential information pertaining to the business of Eliassen or any of its customers, representatives, agents, consultants, licensees, or affiliates. Employee further agrees that upon termination of his/her employment with Eliassen for any reason whatsoever he/she shall immediately return to Eliassen all property and confidential information of Eliassen. The term "confidential information," as used in this paragraph, shall include, but is not limited to, trade secrets, including all writings, notes, studies and reports prepared, compiled or acquired by Employee during the course of his/her employment; customer lists; consultant lists; pricing information; marketing techniques; documentation of business plans and opportunities; financial statements; specialized customer information concerning unique, novel or specific purchasing habits; marketing plans or projections; information relating to any special products and services that Eliassen may offer or provide to its customers or consultants from time to time; and any data or information maintained or compiled in any form, including information contained on computer disks, that is not generally known to the public. Employee further agrees that the term "confidential information" also includes the form, method and amounts of any and all sums paid to Employee by Eliassen, and Employee agrees not to disclose any details of or about such payments to anyone inside or outside of Eliassen.

*See* Gill Employment Agreement ¶ 3 (*Ex. A*); *see also* Haegle Employment Agreement, ¶ 3 (*Ex. B*).).

28.   Both the Gill Employment Agreement and the Haegle Employment Agreement also provide for certain remedies in the case of a breach or threatened breach of their respective agreements. Specifically, both the Gill Employment Agreement and the Haegle Employment Agreement, in part, provide:

### 4.   Remedy for Breach

In the event of a breach or threatened breach of this agreement, Eliassen shall be entitled to a preliminary and/or permanent injunction restraining such breach. It is further agreed that, in consideration of the difficulties that accompany estimating the damage resulting from a breach of this agreement by Employee, Eliassen may, at its discretion, elect either (1) to receive the sum of $100.00 as liquidated damages for each day Employee is in breach of the agreement, or (2) to prove and recover actual damages caused by any such breach(es). Eliassen shall further be entitled to recover all attorneys' fees and expenses reasonably incurred in establishing any breach of the agreement. These damages, attorneys' fees and

expenses shall be in addition to, and not in lieu of, any preliminary and/or
permanent injunctive relief that may be available to Eliassen[.]

*See* Gill Employment Agreement ¶ 4 (***Ex. A***); *see* Haegle Employment Agreement, ¶ 4
(***Ex. B***).

29.     Both the Gill Employment Agreement and the Haegle Employment Agreement

also provide that Eliassen and Ms. Gill and Mr. Haegle "expressly agree that the provisions of

the [Employment Agreements] shall be construed and interpreted in accordance with the laws of

the Commonwealth of Massachusetts." *See* Gill Employment Agreement ¶ 6 (***Ex. A***); *see*

Haegle Employment Agreement, ¶ 6 (***Ex. B***).

30.     Both the Gill Employment Agreement and the Haegle Employment Agreement

also provide that the "terms and conditions of the [respective Gill and Haegle Employment

Agreements] shall survive any changes made in the future to the employment terms of employee,

including, but not limited to, changes in the salary, benefits, bonus plans, job title and job

responsibilities." *See* Gill Employment Agreement ¶ 11(***Ex. A***); *see* Haegle Employment

Agreement, ¶ 11 (***Ex. B***).

31.     Effective January 7, 2019, certain aspects of Ms. Gill's job, title and

compensation were changed by agreement with Ms. Gill.  Ms. Gill's title changed to Senior

Director, Client Services with Eliassen, as did certain job responsibilities and aspects of her

compensation package.  In connection with those changes, Ms. Gill executed on January 15,

2019, a letter agreement, dated January 14, 2019, re-affirming her obligations under her 2010

employment agreement in connection with her new job and responsibilities.  A true copy of Ms.

Gills' January 15, 2019 re-affirmation of her 2010 Employment Agreement is attached as

***Exhibit C***.  The compensation changes enabled Ms. Gill to make more money through an

increased direct incentive program.  Ms. Gill remained on the Eliassen leadership council until she voluntarily resigned from Eliassen.

32.     During her employment with Eliassen, Ms. Gill was privy to, and familiar with, EG Life Sciences contracts with its clients.  On January 15, 2019, Ms. Gill requested and received an Excel spreadsheet from an Eliassen colleague identifying every job start within EG Life Sciences from November 1, 2010 through early January 2019.  This spreadsheet identified 944 job starts, including over 800 separate consultants, including extensive confidential details about each start, including among other things, each Client hiring manager, the consultants' pay rates, the bill rates charged to each Client, job titles, and each assignment's estimated end dates.  There was no valid business reason for Ms. Gill to request or obtain this information.

33.     From October 2018 through January 2019, Ms. Gill and Mr. Haegle were involved in substantial, ongoing discussions with a major client of EG Life Sciences (hereinafter referred to as "*Client No. 1*") about a project to resolve a backlog of complaints involving one of *Client No. 1's* devices.

34.     On January 18, 2019, *Client No. 1* indicated to Mr. Haegle that it was ready to proceed with this "complaints project" and asked to discuss the scope of the work with EG Life Sciences.  Ms. Gill responded to Client No. 1 on the same date, January 18, 2019, by e-mail, copying Mr. Haegle, as follows:  "*That's great news.  Can we talk at 10:30 am Monday?*"

35.     Ms. Gill and Mr. Haegle continued to work with *Client No. 1* on the "complaints project" through the last week that they were employed by Eliassen.  On or about January 28, 2019, Ms. Gill prepared a list of proposed temporary staff positions, including suggested years of experience, costs and assignment duration to the EG Life Sciences client.  When *Client No. 1*

gave final approval and began to seek Consultants to staff the "complaints project", it chose to use EGLS exclusively for its staffing needs.

36.    During January 2019, Ms. Gill emailed several confidential internal Eliassen compensation plans from her Eliassen computer to her personal email account. On January 7, 2019, Ms. Gill sent 2015 and 2017 Eliassen internal and confidential compensation plans to her personal e-mail account in two separate e-mails. On January 25, 2019, Ms. Gill sent several EG Life Sciences compensation plans to her personal e-mail account. There was no valid business reason for Ms. Gill to request or obtain this information. True copies of the three January 2019 e-mails (without the attachments to them) sent by Ms. Gill from her Eliassen email to her personal e-mail account are attached as ***Exhibit D***.

37.    In connection with his work at EG Life Sciences, Mr. Haegle worked with EG Life Sciences clients to develop, maintain and cultivate consulting arrangement and other staffing relationships on behalf of EG life Sciences. In particular, Mr. Haegle had ongoing business communications with another EG Life Sciences client (hereinafter "***Client No. 2***"). While he was employed at EG Life Sciences, Mr. Haegle had scheduled an appointment for February 6, 2019 with ***Client No. 2***.

### (iv.)    Ms. Gill and Mr. Haegle Resign from Eliassen to Jumpstart PTS Advance's Life Sciences Group

38.    On or about February 1, 2019, Ms. Gill informed Greg Coir, Executive Vice President of Eliassen's Life Sciences group, that she was resigning from Eliassen. Subsequently, in February, 2019, Ms. Gill changed her LinkedIn profile to indicate that she was working as Managing Director of the Life Sciences group at PTS Advance. A true and accurate copy of Ms. Gill's LinkedIn profile is attached hereto as ***Exhibit E***.

39.     On the same day that Ms. Gill resigned, or about February 1, 2019, Mr. Haegle also resigned from EG Life Sciences.  On or about February 6, 2019, Mr. Haegle reached out to *Client No. 2* to try to reschedule the previously scheduled February 6, 2019 meeting to February 25, 2019, when he would be working with a new employer, PTS Advance.

40.     On February 7, 2019, Eliassen wrote to Mr. Haegle demanding that he cease and desist from any and all efforts on behalf of PTS Advance to seek to do business with any entities that he had approached during the last eighteen (18) months of his employment at Eliassen, and that he also cease and desist from all other activites in violation of his 2016 Agreement with Eliassen.  A true copy of the demand letter sent to Mr. Haegle is attached as ***Exhibit F***.

41.     On February 7, 2019, Eliassen also wrote a letter to PTS Advance's CEO, Dane Groeneveld, notifying PTS Advance of Mr. Haegle's improper attempt to reschedule the meeting with *Client No. 2,* and providing PTS Advance with a copy of Mr. Haegle's employment agreement with Eliassen.  In response to Eliassen's letter to PTS Advance, Mr. Groeneveld wrote an e-mail, dated February 7, 2019, stating that he "shall investigate [the allegations] accordingly and that *"[w]e intend for Glenn to appropriately honor his commitments and will set the necessary controls in place to monitor this*."  A true copy of PTS Advance's e-mail from Mr. Groeneveld to Eliassen's Associate Counsel and General Counsel is attached as ***Exhibit G***.

42.     On February 8, 2019, Eliassen sent a letter reminding Ms. Gill of her post-employment obligations, including the requirement to abide by the confidentiality obligations and restrictive covenants contained in her 2010 Gill Employment Agreement.  A true copy of Eliassen's February 8, 2019 notice letter to Ms. Gill is attached as ***Exhibit H***.  On the same date, Eliassen also sent a letter to PTS Advance's CEO, Mr. Groeneveld, notifying him of Eliassen's contractual relationship with Ms. Gill, and providing PTS Advance with a copy of Ms. Gill's

2010 Employment Agreement, including the post-employment restrictive covenants, among others. A true copy of Eliassen's February 8, 2019 notice letter to PTS Advance's CEO, Dane Groeneveld, is attached as ***Exhibit I***.

43.    In response to Eliassen's letter to PTS Advance, Mr. Groeneveld wrote an e-mail, dated February 8, 2019, stating, in part: "*They do not officially commence employment until the end of the month.  But I will be working with my team to set out an appropriate program to manage this.*" A true copy of Mr. Groeneveld's February 8, 2019 e-mail is attached as ***Exhibit J***.

44.    In the press release announcing the appointment of Ms. Gill as Managing Director of PTS Advance's life sciences division, Ms. Gill was quoted as follows:  "*It is a truly unique opportunity to join the Leadership Team at PTS Advance and **combine my** passion, knowledge and **network across the Life Sciences industry** with the vision and execution track record that Dane Groeneveld and the Stein Family have set in this industry.*" A true copy of the Press Release is attached as ***Exhibit K*** (emphasis added).

45.    On February 22, 2019, Eliassen followed up on the PTS Advance press release with an e-mail to PTS Advance's Mr. Groeneveld stating, in part:  "*Now that Jayne Gill and Glenn Haegle have commenced their employment with PTS Advance, we would like to discuss putting together written agreements detailing the scope of the restrictions on Ms. Gill's and Mr. Haegle's activities with respect to Eliassen clients, employees and confidential information.*"  In response to this February 22, 2019 e-mail, Mr. Groeneveld replied:  "*We have no intention of them breaking any of the legally binding terms of their agreements, and we have been working on a market plan to ensure that we monitor activity appropriately. . . . So I do not see any value in spending time and money with lawyers to put anything additional in place.*" A true copy of

the e-mail thread, dated February 22, 2019, by and between Eliassen and PTS Advance's CEO, Mr. Groeneveld, is attached as *__Exhibit L__*.

46.     On information and belief, PTS Advance hired Ms. Gill and Mr. Haegle in order to set up and jumpstart PTS Advances' Life Sciences group based on the knowledge and proprietary and confidential information Ms. Gill and Mr. Haegle obtained during their employment with Eliassen.

47.     On information and belief, on or about February 28, 2019, an EG Life Sciences consultant on assignment(M\*\*\*\* B\*\*\*\*)("*EGLS Consultant No. 1*") with another EGLS client was contacted by a PTS Advance recruiter about a complaint project with EGLS *Client No. 1*. The PTS recruiter is reported to have informed the EGLS consultant on assignment elsewhere that this was not the type of project or position that he had worked on in the past. *EGLS Consultant No. 1* was a person known to Ms. Gill, both because she was listed on the spreadsheet of all EGLS starts since 2010 that Ms. Gill obtained shortly before quitting her job at Eliassen, and because in July 2017, an EG Life Sciences recruiter had sent *EGLS Consultant No. 1's* resume to Ms. Gill as a possible candidate for placement on another "complaints project."

48.     On information and belief, while employed by PTS Advance, Ms. Gill also passed on information concerning another EGLS consultant (A\*\*\*\*\*\* G\*\*\*\*)("*EGLS Consultant No. 2*"), who was on assignment at *Client No. 1*, to another PTS Advance recruiter. *EGLS Consultant No. 2*. reported that a PTS Advance recruiter had called him at the suggestion of Ms. Gill.

49.     On or prior to March 11, 2019, Mr. Haegle made a phone call to an entity affiliated with *Client No. 1* ("*Affiliate of Client No. 1*"), which is also a client of Eliassen and

EG Life Sciences in violation of his non-solicitation covenant.  In connection with his work within the last eighteen months at Eliassen, Mr. Haegle had prior business dealings with the *Affiliate of Client No. 1* and the manager he recently contacted.  The contact at the *Affiliate of Client No. 1* responded to Mr. Haegle by sending an e-mail to Mr. Haegle's former e-mail account at Eliassen.  On or about March 12, 2019, Mr. Haegle also spoke by telephone with the client contact at the *Affiliate of Client No. 1* thereby demonstrating that the client contact at the *Affiliate of Client No. 1* knew of Mr. Haegle through his work on behalf of Eliassen and that Mr. Haegle identified that he had left Eliassen and identified his current employer, on information and belief, in order to trade on and use Eliassen's good will for the benefit of a competitor, PTS Advance.

50.     The PTS Advance's Life Sciences group provides services to the same segments of the Life Sciences industry served by EG Life Sciences.  EG Life Sciences and PTS Advance Life Sciences are market competitors.

51.     As demonstrated by the past conduct of both Ms. Gill and Mr. Haegle in violation of their respective covenants and obligations owed to Eliassen and EG Life Sciences, there is a real and substantial risk that Ms. Gill and Mr. Haegle's employment will jumpstart PTS Advance's Life Sciences group utilizing Eliassen's confidential and proprietary business information.

52.     Ms. Gill and Mr. Haegle will suffer no hardship from being required to abide by the restrictive covenants set forth in their respective Employment Agreements.

## COUNT I
### Breach of Employment Agreement Against Ms. Gill

53.     Eliassen and EG Life Sciences repeat and re-allege the allegations set forth in the preceding paragraphs.

16

54.     Ms. Gill voluntarily entered into an Employment Agreement with Eliassen, in which she voluntarily entered into certain restrictive covenants, including non-disclosure, noncompetition and non-solicitation covenants, in connection with her employment with Eliassen.  The Plaintiffs have legitimate business interests, including their good will and confidential information, to protect by means of the Gill Employment Agreement, which was re-affirmed by Ms. Gill less than three weeks before she voluntarily terminated her employment at Eliassen.

55.     As demonstrated by the above acts of Ms. Gill soliciting, directly or indirectly, Eliassen and EG Life Sciences' clients, including Client No. 1, and Eliassen/EG Life Sciences' consultants, Ms. Gill has already breached her Gill Employment Agreement with Eliassen, including, but not limited to, her non-solicitation covenant and her non-disclosure covenant, among others.

56.     In her position as Managing Director of the Life Sciences group at PTS Advance, and in the absence of an injunction preventing her from violating her restrictive covenants, including her non-disclosure, noncompetition and non-solicitation covenants, Ms. Gill has used and likely will continue to use Eliassen confidential and proprietary information to jumpstart PTS Advance's Life Sciences group, in violation of the non-disclosure provisions of her Employment Agreement.

57.     In her position as Managing Director of the PTS Advance Life Sciences group, and in the absence of an injunction preventing her from violating her restrictive covenants, including her non-disclosure, noncompetition and non-solicitation covenants, Ms. Gill has entered employment in a business that directly competes with Eliassen's business in the United States, in breach of her Employment Agreement.

58.     On information and belief, including the contact by a PTS Advance recruiter on a project that was exclusive to EG Life Sciences detailed above, and in the absence of an injunction preventing her from violating her restrictive covenants, including her non-disclosure, noncompetition and non-solicitation covenants, Ms. Gill will interfere, directly or indirectly, with the business relations of Eliassen, in breach of her Employment Agreement.

59.     In her position as Managing Director of PTS Advance's Life Sciences group, and in the absence of an injunction preventing her from violating her restrictive covenants, including her non-disclosure, noncompetition and non-solicitation covenant, Ms. Gill will seek to provide services, directly or indirectly, to Eliassen clients to whom she has personally provided services within the last eighteen months preceding her resignation from Eliassen on behalf of a competing organization, in breach of her Employment Agreement.

60.     In her position as Managing Director of PTS Advance's Life Sciences group, and in the absence of an injunction preventing her from violating her restrictive covenants, including her non-disclosure, noncompetition and non-solicitation covenant, Ms. Gill will seek business, directly or indirectly, from persons and corporations located in counties in which she solicited business during the eighteen months preceding her resignation from Eliassen on behalf of a competing organization, in breach of her Employment Agreement.

61.     In the absence of an injunction restraining Ms. Gill from violating her restrictive covenants, including her non-disclosure, noncompetition and non-solicitation covenants, if she is permitted to work as Managing Director of the PTS Advance's Life Sciences group, there is a substantial risk that Ms. Gill will solicit, directly or indirectly, current Eliassen customers and clients, as well as prospective Eliassen clients with whom Ms. Gill was involved in soliciting in the eighteen months preceding her resignation, in violation of her Employment Agreement.

62.     In the absence of an injunction restraining Ms. Gill from violating her restrictive covenants, including her non-disclosure, noncompetition and non-solicitation covenants, if she is permitted to work as Managing Director of PTS Advance's Life Sciences group, there is a substantial risk that Ms. Gill will interfere, directly or indirectly, with Eliassen's business relationships with its customers and clients, in violation of her Employment Agreement.

63.     Eliassen has suffered, and continues to suffer, irreparable harm, including harm to Eliassen's good will, as well as damages and attorneys' fees as a consequence of Ms. Gill's breach of the restrictive covenants in her Employment Agreement.

64.     Based on Ms. Gill's breaches of contract described above, Eliassen is entitled to immediate, preliminary and permanent injunctive relief and all appropriate damages against her.

## COUNT II
### Breach of Common Law Confidentiality Against Ms. Gill

65.     Eliassen and EG Life Sciences repeat and re-allege the allegations set forth in the preceding paragraphs.

66.     Eliassen and EGLS take extensive measure to protect internal confidential information for the benefit of Eliassen and EGLS.  The extensive measures include, but are not limited to, password protected access to various internal confidential information; substantial investment in the internal systems to protect Eliassen and EGLS confidential information, including the development of an internal database of EGLS clients containing confidential and proprietary information on EGLS clients and consultants, pricing information, assignment information, hiring managers, particular requirements of clients and consultants and other information obtained by Eliassen and EGLS for the benefit of Eliassen and EGLS.

67.     Eliassen, and its related company EGLS, have spent millions of dollars and substantial time and effort over many years to develop, maintain, cultivate and retain Eliassen

good will relationships and confidential information, including, but not limited to, substantial

expenditures of time and money on Eliassen and EGLS's internal computers, software systems,

servers and other technology that hosts and maintains Eliassen's internal confidential

information as well as substantial amounts of time and money training, recruiting and

maintaining its internal sales team and time, money and effort building client relationships at

Eliassen and EG Life Sciences.  Eliassen and EGLS internal confidential information is not

accessible by those persons not employed by Eliassen and/or EGLS and/or its owners and

investors.  The Eliassen and EGLS confidential information and their good will are valuable to

Eliassen and EGLS.  It would be extremely difficult, if not impossible, for others to properly

acquire or duplicate Eliassen and EGLS's internal confidential information and client good will

relationships.

68.     As more fully detailed above, Ms. Gill's use of Eliassen and/or EGLS confidential

information and good will for the benefit of a competitor is a material breach of her contractual

and common law confidentiality obligations.

69.     Eliassen has suffered, and continues to suffer, irreparable harm, as well as

damages and attorneys' fees as a consequence of Ms. Gill's breach of her contractual non-

disclosure and common law confidentiality obligations.  As more fully detailed above, Ms. Gill's

use and disclosure of Eliassen and EGLS's internal confidential information has caused and, if

not enjoined, will continue to cause ongoing and irreparable harm to Eliassen and EGLS's

business.

70.     Based on Ms. Gill's breaches of contract described above, Eliassen is entitled to

immediate, preliminary and permanent injunctive relief and all appropriate damages against her.

## COUNT III
### Violation of the Defend Trade Secrets Act
### of 2016-18 U.S.C. § 1836(b)(1) against Ms. Gill

71.     Eliassen and EG Life Sciences repeat and re-allege the allegations set forth in the preceding paragraphs.

72.     The Defend Trade Secrets Act ("DTSA"), Pub. L. No. 114-153, 130 Stat. 376, which was signed into law on May 11, 2016, specifically allows a private right of action for misappropriation of trade secrets. Eliassen and EG Life Sciences are owners of trade secrets, as defined by the DTSA, which have been willfully misappropriated by Ms. Gill. A person misappropriates a trade secret by, among other things, the acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means, or by using a trade secret of a person without express or implied consent by the other person who used improper means to acquire knowledge of the trade secret.

73.     Eliassen Group and EG Life Sciences took and continues to undertake extensive affirmative measures to keep its confidential and proprietary information and trade secrets, specifically its internal compensation structure, secret. Ms. Gill accepted Eliassen's offer of employment, which was expressly conditioned upon Ms. Gill's signing the Employment Agreement containing restrictive covenants concerning Eliassen's  trade secrets and confidential information Ms. Gill had access to Eliassen's trade secrets during the course of her employment at Eliassen and subsequently disclosed Eliassen's protected trade secret information concerning several Eliassen clients and consultants .

74.     Ms. Gill violated DTSA by using her computer access to Eliassen's computers to download Eliassen trade secrets and confidential and proprietary information belonging to Eliassen to her personal computer without a legitimate business justification on Eliassen's behalf

when she did so.  The trade secrets misappropriated by Ms. Gill relate to a service used in, or

intended for use in, interstate commerce.  The materials misappropriated by Ms. Gill and not

returned by her to the Plaintiffs are internal and proprietary business documents that are part of

Eliassen's trade secrets that the Plaintiffs use with its sales staff which is involved in the conduct

of its interstate commercial business.

75.     The Plaintiffs have no adequate remedy at law to protect against the illegal

misappropriation and use of its trade secrets and confidential information by Ms. Gill. Injunctive

relief is, therefore, necessary and appropriate to restrain the illegal misappropriation and use of

such trade secrets and confidential information pursuant to the DTSA.

76.     Unless Ms. Gill is restrained and enjoined from using Eliassen's trade secrets and

confidential information, which she illicitly obtained through her own misappropriation and her

tortious interference with Plaintiffs' contractual relations with Gill detailed above, Plaintiffs will

suffer immediate and irreparable injury as Ms. Gill will continue to have the unfettered ability to

make use of such trade secrets and confidential information.

77.     As a direct and proximate result of Ms. Gill's misappropriation of Plaintiffs' trade

secrets and confidential information, Eliassen and EG Life Sciences have suffered damages in an

amount yet to be determined.  Pursuant to DTSA, Plaintiffs are entitled to recover damages.  By

reason of Ms. Gill's willful and malicious acts, Plaintiffs are entitled to an award of exemplary

damages from Ms. Gill in such amounts as is necessary to punish her and deter her from the

commission of like acts.  The Court should also award Plantiffs their reasonable attorneys' fees

pursuant to DTSA.

## COUNT IV
### Breach of Employment Agreement against Mr. Haegle

78.    Eliassen and EG Life Sciences repeat and re-allege the allegations set forth in the preceding paragraphs.

79.    Mr. Haegle voluntarily entered into the Haegle Employment Agreement with Eliassen, in which he voluntarily entered into certain restrictive covenants, including non-disclosure, noncompetition, and non-solicitation covenants, in connection with his employment with Eliassen.  The Plaintiffs have legitimate business interests, including their good will and confidential information, to protect by means of the Haegle Employment Agreement.

80.    As demonstrated by the above acts of Mr. Haegle contacting and, on information and belief, soliciting or attempting to solicit, directly or indirectly,  *Client No. 2* and the *Affiliate of Client No. 1*, Mr. Haegle has already breached his Haegle Employment Agreement with Eliassen, including, but not limited to, his non-solicitation covenant and his non-disclosure covenant, among others.

81.    In the absence of an injunction preventing him from violating his restrictive covenants, including his non-disclosure, noncompetition and non-solicitation covenants, Mr. Haegle has used and likely will continue to use Eliassen confidential and proprietary information to jumpstart PTS Advance's Life Sciences group, in violation of the non-disclosure provisions of his Employment Agreement.

82.    In the absence of an injunction preventing him from violating his restrictive covenants, including his non-disclosure, noncompetition and non-solicitation covenant, Mr. Haegle will seek to provide, directly or indirectly, services to Eliassen clients to whom he has

personally provided services within the last eighteen months preceding his resignation from Eliassen on behalf of a competing organization, in breach of his Employment Agreement.

83.    In the absence of an injunction preventing him from violating his restrictive covenants, including his non-disclosure, noncompetition and non-solicitation covenant, Mr. Haegle will seek business, directly or indirectly, from persons and corporations located in counties in which he solicited business during the eighteen months preceding his resignation from Eliassen on behalf of a competing organization, in breach of his Employment Agreement.

84.    Given his conduct detailed above, and in the absence of an injunction restraining Mr. Haegle from violating his restrictive covenants, including his non-disclosure, noncompetition and non-solicitation covenants, if he is permitted to work in PTS Advance's Life Sciences group, there is a substantial risk that Mr. Haegle will continue to solicit, directly or indirectly, current Eliassen customers and clients, as well as prospective Eliassen clients with whom Mr. Haegle was involved in soliciting in the eighteen months preceding his resignation, in violation of his Employment Agreement.

85.    Given his conduct detailed above, and in the absence of an injunction restraining Mr. Haegle from violating his restrictive covenants, including his non-disclosure, noncompetition and non-solicitation covenants, if he is permitted to work in PTS Advance's Life Sciences group, there is a substantial risk that Mr. Haegle will interfere, directly or indirectly with Eliassen's business relationships with its customers and clients, in violation of his Employment Agreement.

86.    Eliassen has suffered, and continues to suffer, irreparable harm, including harm to Eliassen's good will, as well as damages and attorneys' fees as a consequence of Mr. Haegle's breach of the restrictive covenants in his Employment Agreement.

87.     Based on Mr. Haegle's breaches of contract described above, Eliassen is entitled

to immediate, preliminary and permanent injunctive relief and all appropriate damages against

him.

### COUNT V
**Violation of the Defend Trade Secrets Act
of 2016-18 U.S.C. § 1836(b)(1) against Ms. Gill**

88.     Eliassen and EG Life Sciences repeat and re-allege the allegations set forth in the

preceding paragraphs.

89.     During Mr. Haegle's employment with Eliassen, Mr. Haegle was given and had

access to Plaintiffs' trade secrets and/or confidential and proprietary information, including, but

not limited to, the client lists and their detailed profiles.

90.     In violation of the Defend Trade Secrets Act,  Mr. Haegle has misappropriated

Plaintiffs' trade secrets and has used this information for his own benefit and to the detriment of

Eliassen and EG Life Sciences, without their consent and knowing that such information

constituted trade secrets and proprietary information of Eliassen and/or EG Life Sciences, and

knowing that Mr. Haegle had acquired knowledge of such trade secrets and proprietary

information under circumstances giving rise to a duty to maintain their secrecy and/or limit their

use for the benefit of Eliassen and/or EG Life Sciences.

91.     The Plaintiffs have been damaged and will continue to be damaged by Mr.

Haegle's willful and malicious misappropriation and use of Eliassen and EG Life Sciences'

proprietary property and the wrongful solicitation of those same clients contained therein.

92.     Based on Mr. Haegle's violations described above, Eliassen is entitled to

immediate, preliminary and permanent injunctive relief and all appropriate compensatory and

damages against him.

**WHEREFORE**, Eliassen respectfully requests that this Court:

A.   Enter judgment for Eliassen on Counts I, II, III, IV and V of the Verified

Complaint;

B.   Award monetary damages and attorneys' fees to Eliassen in an amount to be

proved at trial under Counts I, II, III, IV, and V of the Verified Complaint;

C.   In accordance with Section 1 of her Employment Agreement, and the claims

asserted against her in Counts I, II and III, enter a temporary, preliminary and/or

permanent injunction enjoining Ms. Gill from working in the Life Sciences group

at PTS Advance;

D.   In accordance with Section 2 of her Employment Agreement, and the claims

asserted against her in Counts I, II and III, enter a temporary, preliminary and/or

permanent injunction enjoining Ms. Gill from soliciting, hiring, or engaging,

directly or indirectly, any Eliassen clients or customers.

E.   In accordance with Section 2 of her Employment Agreement, and the claims

asserted against her in Counts I, II and III, enter a temporary, preliminary and/or

permanent injunction enjoining Ms. Gill from soliciting, hiring, engaging, or

otherwise interfering with Eliassen's business relationship with any person who is,

or was within the year prior to his resignation, engaged as a consultant or

employed by Eliassen.

F.   In accordance with Section 2 of her Employment Agreement, and the claims

asserted against her in Counts I, II and III, enter a temporary, preliminary and/or

permanent injunction enjoining Ms. Gill from soliciting or otherwise interfering

with Eliassen's business relationships with any Eliassen customer or client.

G.   In accordance with Section 1 of her Employment Agreement, and the claims asserted against her in Counts I, II and III, enter a temporary, preliminary and/or permanent injunction enjoining Ms. Gill from doing business with, seeking to do business, or interfering with Eliassen's relationship with any Eliassen prospective client or customer with whom Ms. Gill was involved in soliciting during the last eighteen months of her employment with Eliassen.

H.   In accordance with Section 1 of her Employment Agreement, and the claims asserted against her in Counts I, II and III, enter a temporary, preliminary and/or permanent injunction enjoining Ms. Gill from doing business or seeking business from any person or entity located in any county in which Ms. Gill approached customers or solicited business during the last eighteen months of her employment with Eliassen.

I.   Award exemplary and punitive damages and award the Plaintiffs their reasonable attorneys' fees and costs under Count III against Ms. Gill in an amount to be determined at trial against Ms. Gill;

J.   In accordance with Section 1 of his Employment Agreement, and the claims asserted against him in Counts IV and V, enter a temporary, preliminary and/or permanent injunction enjoining enjoin Mr Haegle from working in the Life Sciences group at PTS Advance;

K.   In accordance with Section 2 of his Employment Agreement, and the claims asserted against him in Counts IV and V, and the claims asserted against him in Counts IV and V, enter a temporary, preliminary and/or permanent injunction enjoining enter a temporary, preliminary and/or permanent injunction enjoining

enjoin Mr. Haegle from, directly or indirectly, soliciting, hiring, or engaging any Eliassen and/or EGLS's clients or customers;

L. Award exemplary and punitive damages and award the Plaintiffs their reasonable attorneys' fees and costs under Count V against Mr. Haegle in an amount to be determined at trial against Mr. Haegle;

M. In accordance with Section 3 of their respective Employment Agreements, and their statutory and common law confidentiality obligations, and the claims asserted against them in Counts I, II III, IV and V, enter a temporary, preliminary and/or permanent injunction enjoining Ms. Gill and Mr. Haegle from making any use of Eliassen and EGLS's proprietary information, trade secrets, and/or confidential information;

N. In accordance with Section 3 of their respective Employment Agreements, Order Ms. Gill and Mr. Haegle, and the claims asserted against them in Counts I and IV, within 24 hours of the Court's Order, to return all documents containing Eliassen and /or EGLS confidential information to Eliassen and EGLS;

O. Order Ms. Gill and Mr. Haegle to preserve, pending further Order of this Court, all electronic evidence, e-mails, attachments, and photographs of all Eliassen information and materials sent or received by Ms. Gill and Mr. Haegle from any source, including any personal or company email address, or otherwise taken, removed, obtained and/or procured from anyone, including without limitation current and former Eliassen employees or consultants and Eliassen clients;

P. Enjoin Ms. Gill and Mr. Haegle from any further violations of the restrictive covenants in their respective Employment Agreements.

Q.    Enjoin PTS Advance from employing Ms. Gill and Mr. Haegle in a manner not

consistent with the restrictive covenants in Ms. Gill's Employment Agreement

and Mr. Haegle's Employment Agreement with Eliassen.

R.    Award Eliassen its costs and statutory interest incurred in connection with this

action.

S.    Award Eliassen such other and further relief as the Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

The Plaintiffs hereby demand a trial by jury on all claims so triable.

**ELIASSEN GROUP, LLC and
EG LIFE SCIENCES LLC**

By their attorneys,

/s/  Christopher R. O'Hara
Christopher R. O'Hara (BBO # 548611)
cohara@toddweld.com
Suzanne Elovecky (BBO # 670047)
selovecky@toddweld.com
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Dated:  March 13, 2019

## VERIFICATION

I, Greg Coir, am the Executive Vice President of EG Life Sciences, LLC and am an employee of Eliassen Group, LLC.  I have read the foregoing Verified Complaint and Jury Demand and, believe the allegations to be true and accurate to the best of my knowledge, information and belief and based upon documents reasonably available to Eliassen Group, LLC and EG Life Sciences, LLC, and accordingly, verify the complaint on behalf of Eliassen Group, LLC and EG Life Sciences, LLC.


Greg Coir
Executive Vice President
Eliassen Group, LLC
EG Life Sciences, LLC
55 Walkers Brook Drive, 6th Floor
Reading, MA 01867


Dated: March 13, 2019






## AGREEMENT GOVERNING NON-COMPETITION
## CONFIDENTIAL INFORMATION AND TRADE SECRETS

THIS AGREEMENT MADE EFFECTIVE THE 5th DAY OF August, 2010, by and between Eliassen Group,L.LC. ("Eliassen") and Jayne Gill, (the "Employee").

WHEREAS Employee acknowledges that as a result of her employment, she has access to and knowledge of confidential, proprietary information belonging to Eliassen and/or trade secrets of Eliassen, including such information as the identity of clients and customers of Eliassen and consultants utilized by Eliassen and clients and customers of Eliassen; and

WHEREAS Employee acknowledges that it would be unfair to use such access to or knowledge of confidential and proprietary information belonging to Eliassen and/or trade secrets of Eliassen to compete with Eliassen;

NOW THEREFORE, in consideration of Employee's Employment and/or continued Employment, and other good and valuable consideration, Employee and Eliassen agree as follows:

### 1. Restrictive Covenant

For so long as Employee is employed by Eliassen and for a period of eighteen (18) months after the termination of Employee's employment for any reason whatsoever whether voluntarily or involuntarily, Employee shall not, without prior express written consent of Eliassen, directly or indirectly, whether as an employee, officer, trustee, consultant, owner, partner, co-venturer, agent, advisor or otherwise, on behalf of any "competing organization": 1) do business with or seek business from any persons, entities or corporations approached or solicited by Employee at any time during the eighteen (18) months prior to the termination of employment with Eliassen, and/or 2) do business with or seek business from any persons, entities or corporations located in any county in which Employee approached customers or solicited business at any time during the eighteen (18) months prior to the termination of employment with Eliassen. For purposes of this agreement, a "competing organization" shall be any business involved in the same or substantially similar business as Eliassen or which competes in any way with the business of Eliassen, either directly or indirectly as a contractor or subcontractor. Employee further acknowledges that to the extent Employee is engaged in sales and/or dealings with customers, Employee develops substantial good will or behalf of Eliassen by dealing with customers. Such customer good will is, in all instances, the property of Eliassen. Employee further acknowledges that any solicitation of customers in violation of this agreement would be a misappropriation of customer good will to the substantial detriment of Eliassen.

### 2. Non-Solicitation

Employee agrees that she shall not, for a period of eighteen (18) months from the date her employment with Eliassen terminates, solicit any contract or award, or accept any contract or award for work, or perform any service individually or on behalf of any competing organization, on any project that Employee worked on any time during her Employment with Eliassen. Employee also agrees that she shall not solicit, recruit to work, or employ any consultant or employee of Eliassen in any capacity whatsoever, either directly or indirectly, for a period of eighteen (18) months after the Employee leaves the employment of Eliassen.

Aug 09 10 07.56a

 

### 3. Non-Disclosure and Return of Confidential Information and Trade Secrets

Employee agrees that during or after the term of her employment with Eliassen, she shall not at any time disclose to others or use for her own benefit any trade secrets or confidential information pertaining to the business of Eliassen or any of its customers, representatives, agents, consultants, licensees, or affiliates. Employee further agrees that upon termination of her employment with Eliassen for any reason whatsoever she shall immediately return to Eliassen all property and confidential information of Eliassen. The term "confidential information," as used in this paragraph, shall include, but is not limited to, trade secrets, including all writings, notes, studies and reports prepared, compiled or acquired by Employee during the course of her employment, customer lists; consultant lists; pricing information; marketing techniques; documentation of business plans and opportunities; financial statements; specialized customer information concerning unique, novel or specific purchasing habits; marketing plans or projections; information relating to any special products and services that Eliassen may offer or provide to its customers or consultants from time to time; and any data or information maintained or compiled in any form, including information contained on computer disks, that is not generally known to the public. Employee further agrees that the term "confidential information" also includes the form, method and amounts of any and all sums paid to Employee by Eliassen, and Employee agrees not to disclose any details of or about such payments to anyone inside or outside of Eliassen.

### 4. Remedy for Breach

In the event of a breach or threatened breach of this agreement, Eliassen shall be entitled to a preliminary and/or permanent injunction restraining such breach. It is further agreed that, in consideration of the difficulties that accompany estimating the damage resulting from a breach of this agreement by Employee, Eliassen may, at its discretion, elect either (1) to receive the sum of $100.00 as liquidated damages for each day Employee is in breach of the agreement, or (2) to prove and recover actual damages caused by any such breach(es). Eliassen shall further be entitled to recover all attorneys' fees and expenses reasonably incurred in establishing any breach of the agreement. These damages, attorneys' fees and expenses shall be in addition to, and not in lieu of, any preliminary and/or permanent injunctive relief that may be available to Eliassen. Employee further agrees and acknowledges that the running of the period of restriction set forth in paragraphs one (1) and two (2) shall be tolled (i.e. shall not run) during any time during in which Employee violates the provisions of this agreement.

### 5. Waiver of Breach

The waiver by Eliassen of a breach of any provision of this agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee. No waiver shall be valid unless in writing and signed by an authorized officer of Eliassen.

### 6. Governing Law

Eliassen and Employee expressly agree that the provisions of this Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts.

### 7. Employment At Will

Nothing in this agreement shall be construed as a promise or agreement of any kind, express or implied, of employment for any specific duration.

### 8. Entire Agreement

This agreement constitutes the entire agreement and understanding between the parties with regard to all matters herein and supersedes any agreement that may have been previously entered into regarding the subject matter of this agreement. There are no other agreements, conditions or representations, oral or written, express or implied, with regard to all matters herein. This agreement may not be changed orally, but only by an agreement in writing executed by the party against whom enforcement of any waiver, change, modification, extension, addition or discharge is sought.

Aug 09 10 07:55a

 

#### 9. Severability

In the event one or more of the provisions in this agreement is held invalid, illegal or unenforceable in any respect, such a holding shall not affect any other provisions of this agreement. Further, if any provision of this agreement shall be held to be excessively broad as to time, duration, geographic scope, activity or subject, it shall be construed by limiting and reducing it so as to be enforceable to the greatest extent permitted by law

#### 10. Acknowledgment of Voluntariness and Consideration

Employee acknowledges that she understands the provisions of this agreement, that the agreement is entered into knowingly and voluntarily, and that Employee has been afforded a sufficient amount of time to consider the agreement and to consult with and seek the advice of any person of Employee's choosing, including an attorney Employee further acknowledges that any employment Employee has with Eliassen after the date on which this agreement is executed is adequate and sufficient consideration to support the agreement.

#### 11. Survival

The terms and conditions of this agreement shall survive any changes made in the future to the employment terms of employee including, but not limited to, changes in the salary, benefits, bonus plans, job title and job responsibilities.

#### 12. Notice to Future Employers

For a period of eighteen (18) months after cessation of Employee's employment with Eliassen, Employee will inform each new employer or potential employer, prior to accepting employment, of the existence and details of this agreement, and provide that employer or potential employer a copy of this agreement. Employee also authorizes Eliassen to notify any such employer or potential employer of the existence and details of this agreement, including providing a copy of the agreement. This section shall also apply in the event Employee seeks employment with another employer while employed by Eliassen.

#### 13. Assignment

Employee agrees and hereby consents that Eliassen may assign this Agreement to an affiliate of Eliassen or in connection with a sale or transfer of all or substantially all of its business irrespective of whether the sale or transfer occurs by way of change of control, sale of assets, sale of stock or merger. In the event of assignment to an affiliate or sale or transfer of the business, this Agreement shall be deemed assigned or transferred to such successor in interest automatically and without further action by Eliassen or Employee.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals to this agreement governing non-competition, confidential information and trade secrets as set forth below.

ELIASSEN GROUP, LLC

By _____

John Segally Director of Human Resources

Address:
   30 Audubon Road
   Wakefield, MA 01880
Phone #: 781-246-1600   Fax #: 781-213-8163

Date: 8/09/10

EMPLOYEE:

_____

Jayne Gill

Address: 40 Aspen Lane

   Bedford, NH 03110

Phone #: 617-westbound Fax #: _____

Date: 8/5/10

# B





## AGREEMENT GOVERNING NON-COMPETITION
## CONFIDENTIAL INFORMATION AND TRADE SECRETS

THIS AGREEMENT IS MADE EFFECTIVE THE 4th of October, 2016 by and between Eliassen Group, LLC, ("Eliassen") and Glenn Haegle ("Employee").

WHEREAS Employee acknowledges that as a result of his/her employment, he/she has access to and knowledge of confidential, proprietary information belonging to Eliassen and/or trade secrets of Eliassen, including such information as the identity of clients and customers of Eliassen and consultants utilized by Eliassen and clients and customers of Eliassen, and

WHEREAS Employee acknowledges that it would be unfair to use such access to or knowledge of confidential and proprietary information belonging to Eliassen and/or trade secrets of Eliassen to compete with Eliassen;

NOW THEREFORE, in consideration of Employee's Employment and/or continued Employment, and other good and valuable consideration, Employee and Eliassen agree as follows:

### 1. Non-Compete Covenant:

Employee agrees that upon the termination of Employee's employment, whether by Eliassen or Employee and whether with or without cause, for a period of one (1) year thereafter Employee shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of Eliassen's business in which Employee performed worked during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which Employee worked at the time Employee's employment terminated or any other office in which Employee worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable. The prohibitions contained in this paragraph shall extend to (i) activities undertaken by Employee directly on Employee's own behalf, and to (ii) activities undertaken by Employee indirectly through any individual, corporation or entity which undertakes such prohibited activities with Employee's assistance and in or with respect to which Employee is an owner, officer, director, trustee shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

### 2. Non-Solicitation

(a) For so long as Employee is employed by Eliassen and for a period of eighteen (18) months after the termination of Employee's employment for any reason whatsoever, whether voluntarily or involuntarily, Employee shall not, without prior express written consent of Eliassen, directly or indirectly, whether as an employee, officer, trustee, consultant, owner, partner, co-venturer, agent, advisor or otherwise, on behalf of any "competing organization": 1) do business with or seek business from any persons, entities or corporations approached or solicited by Employee at any time during the eighteen (18) months prior to the termination of employment with Eliassen, and/or 2) do business with or seek business from any persons, entities or corporations located in any county in which Employee approached customers or solicited business at any time during the eighteen (18) months prior to the termination of employment with Eliassen. For purposes of this agreement, a "competing organization" shall be any business involved in the same or substantially similar business as Eliassen or which competes in any way with the business of Eliassen, either directly or indirectly as a contractor or subcontractor. Employee further acknowledges that to the extent Employee is engaged in sales and/or dealings with customers, Employee develops substantial good will on behalf of Eliassen by dealing with customers. Such customer good will is, in all instances, the property of Eliassen. Employee further acknowledges that any solicitation of customers in violation of this agreement would be a misappropriation of customer good will to the substantial detriment of Eliassen.

(b) Employee agrees that he/she shall not, for a period of eighteen (18) months from the date his/her employment with Eliassen terminates, solicit any contract or award, or accept any contract or award for work, or perform any service individually or on behalf of any competing organization, on any project that Employee worked

on any time during her/his Employment with Eliassen. Employee also agrees that he/she shall not solicit, recruit to work, or employ any consultant or employee of Eliassen in any capacity whatsoever, either directly or indirectly, for a period of eighteen (18) months after the Employee leaves the employment of Eliassen.

### 3. Non-Disclosure and Return of Confidential Information and Trade Secrets

Employee agrees that during or after the term of his/her employment with Eliassen, he/she shall not at any time disclose to others or use for his/her own benefit any trade secrets or confidential information pertaining to the business of Eliassen or any of its customers, representatives, agents, consultants, licensees, or affiliates. Employee further agrees that upon termination of his/her employment with Eliassen for any reason whatsoever he/she shall immediately return to Eliassen all property and confidential information of Eliassen. The term "confidential information," as used in this paragraph, shall include, but is not limited to, trade secrets, including all writings, notes, studies and reports prepared, compiled or acquired by Employee during the course of his/her employment; customer lists; consultant lists; pricing information; marketing techniques; documentation of business plans and opportunities; financial statements; specialized customer information concerning unique, novel or specific purchasing habits; marketing plans or projections; information relating to any special products and services that Eliassen may offer or provide to its customers or consultants from time to time; and any data or information maintained or compiled in any form, including information contained on computer disks, that is not generally known to the public. Employee further agrees that the term "confidential information" also includes the form, method and amounts of any and all sums paid to Employee by Eliassen, and Employee agrees not to disclose any details of or about such payments to anyone inside or outside of Eliassen.

### 4. Remedy for Breach

In the event of a breach or threatened breach of this agreement, Eliassen shall be entitled to a preliminary and/or permanent injunction restraining such breach. It is further agreed that, in consideration of the difficulties that accompany estimating the damage resulting from a breach of this agreement by Employee, Eliassen may, at its discretion, elect either (1) to receive the sum of $100.00 as liquidated damages for each day Employee is in breach of the agreement, or (2) to prove and recover actual damages caused by any such breach(es). Eliassen shall further be entitled to recover all attorneys' fees and expenses reasonably incurred in establishing any breach of the agreement. These damages, attorneys' fees and expenses shall be in addition to, and not in lieu of, any preliminary and/or permanent injunctive relief that may be available to Eliassen. Employee further agrees and acknowledges that the running of the period of restriction set forth in paragraphs one (1) and two (2) shall be tolled (i.e. shall not run) during any time frame in which Employee violates the provisions of this agreement.

### 5. Waiver of Breach

The waiver by Eliassen of a breach of any provision of this agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee. No waiver shall be valid unless in writing and signed by an authorized officer of Eliassen.

### 6. Governing Law

Eliassen and Employee expressly agree that the provisions of this Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts.

### 7. Employment At Will

Nothing in this agreement shall be construed as a promise or agreement of any kind, express or implied, of employment for any specific duration.

### 8. Entire Agreement

This agreement constitutes the entire agreement and understanding between the parties with regard to all matters herein and supersedes any agreement that may have been previously entered into regarding the subject matter of this agreement. There are no other agreements, conditions or representations, oral or written, express or implied, with regard to all matters herein. This agreement may not be changed orally, but only by an agreement in writing executed by the party against whom enforcement of any waiver, change, modification, extension, addition or discharge is sought.

 

### 9. Severability

In the event one or more of the provisions in this agreement is held invalid, illegal or unenforceable in any respect, such a holding shall not affect any other provisions of this agreement. Further, if any provision of this agreement shall be held to be excessively broad as to time, duration, geographic scope, activity or subject, it shall be construed by limiting and reducing it so as to be enforceable to the greatest extent permitted by law.

### 10. Acknowledgment of Voluntariness and Consideration

Employee acknowledges that he understands the provisions of this agreement, that the agreement is entered into knowingly and voluntarily, and that Employee has been afforded a sufficient amount of time to consider the agreement and to consult with and seek the advice of any person of Employee's choosing, including an attorney. Employee further acknowledges that any employment Employee has with Eliassen after the date on which this agreement is executed is adequate and sufficient consideration to support the agreement.

### 11. Survival

The terms and conditions of this agreement shall survive any changes made in the future to the employment terms of employee including, but not limited to, changes in the salary, benefits, bonus plans, job title and job responsibilities.

### 12. Notice to Future Employers

For a period of eighteen (18) months after cessation of Employee's employment with Eliassen, Employee will inform each new employer or potential employer, prior to accepting employment, of the existence and details of this agreement, and provide that employer or potential employer a copy of this agreement. Employee also authorizes Eliassen to notify any such employer or potential employer of the existence and details of this agreement, including providing a copy of the agreement. This section shall also apply in the event Employee seeks employment with another employer while employed by Eliassen.

### 13. Assignment

Employee agrees and hereby consents that Eliassen may assign this Agreement to an affiliate of Eliassen or in connection with a sale or transfer of all or substantially all of its business irrespective of whether the sale or transfer occurs by way of change of control, sale of assets, sale of stock or merger. In the event of assignment to an affiliate or sale or transfer of the business, this Agreement shall be deemed assigned or transferred to such successor in interest automatically and without further action by Eliassen or Employee.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals to this agreement governing non-competition, confidential information and trade secrets as set forth below.

ELIASSEN GROUP, LLC

By: _____

Name: Jonathan T. Mann
Title: Vice President & General Counsel
Date: 12 7 2016

Address: 30 Audubon Road
Wakefield, MA 01880
Phone: 781-451-6412
Fax: 781-213-8210

Glenn Haegle

By: _____

Date: 10/6/16
Address: 11917 Front Aster Dr.
Riverview, FL 33579
Phone: 603-801-4093
Email: ghaegle @ gmail.com

# C


**ELIASSEN GROUP®**
Your Success. Our Talent.

January 14, 2019

Jayne Gill
11 Aspen Lane
Bedford, NH 03110

Dear Jayne,

We are pleased to offer you a new position as Sr. Director, Client Services with Eliassen Group, LLC effective January 7, 2019. In this role, you continue to remain on the Eliassen Group Leadership team and will continue to report to Greg Coir in his role as Executive Vice President of Life Sciences & Biometrics. As an employee of Eliassen Group, you will continue to be an at-will employee and either Eliassen or you may terminate the employment relationship at any time for any reason.

Your new base pay amount will be $100,000 annually and you will be eligible to earn commissions on the Life Sciences Account Executive commission plan. You will no longer be eligible for an annual bonus opportunity. In addition, you will be eligible for a 2% override on Account Executive's spread (Glenn Haegle, Nick Donnelly, Kenny Rogers & Jason Provinciali) as of January 7, 2019 and any new starts in 2019.

By signing this letter below, you reaffirm acceptance of the Agreement Governing Non-Competition Confidential Information and Trade Secrets which you signed on August 9, 2010.

Please indicate your acceptance of these terms by signing and returning one copy of this letter to me.

Sincerely,

*Laurie Wasta*

Laurie Wasta
HR Manager – Benefits & Comp

ACCEPTED AND AGREED:

_Jayne Gill_                    January 15, 2019
Jayne Gill                      Date

# D

From: Jayne Gill
Sent: Friday, January 25, 2019 11:25 AM
To: 'jaynerobertsongill@yahoo.com' <jaynerobertsongill@yahoo.com>
Subject: FW: LS & Agile Com Plans

From: Greg Coir
Sent: Friday, January 4, 2019 8:37 AM
To: Jayne Gill <jgill@eglifesciences.com>
Subject: FW: LS & Agile Com Plans

FYI Jayne-the new plans. Steve will review with Recruiters today, and I will call Glenn and inform Nick. Kenny is already on this plan.

## Greg Coir
## Executive Vice President

## Eliassen Group
**Biometrics and Data Solutions I EG Life Sciences**
55 Walkers Brook Drive, 6th Floor, Reading MA 01867
T: 781.295.6739
C: 781.608.5722
www.egbiometrics.com
www.eglifesciences.com

Achieving World Class Net Promoter Score Status!
Inc. Magazine 50 Best Places To Work!

From: Melissa Kline
Sent: Thursday, January 03, 2019 5:27 PM
To: Steven Benè <SBene@eliassen.com>
Cc: Greg Coir <GCoir@eliassen.com>
Subject: RE: LS & Agile Com Plans

Included here is
LS/BIO AE Plan – this will be sent to all Bio/LS AE's
LS/BIO REC Plan – this will be sent to all Bio/LS recruiters
FSP Plan – this one is only sent to Lags, Kevin and Jwalant

Feel free to share the new plans with them when you talk to them as well.  They will get a copy of this to sign off.

There is no change to the FSP plan just updated for 2019.

2

**From:** Steven Benè
**Sent:** Thursday, January 3, 2019 5:23 PM
**To:** Melissa Kline <MKline@eliassen.com>; Greg Coir <GCoir@eliassen.com>; Scott Cordeiro <scordeiro@eliassen.com>
**Subject:** RE: LS & Agile Com Plans

Can you send me a copy of what you will be sending out?

**From:** Melissa Kline
**Sent:** Thursday, January 03, 2019 5:22 PM
**To:** Greg Coir <GCoir@eliassen.com>; Steven Benè <SBene@eliassen.com>; Scott Cordeiro <scordeiro@eliassen.com>
**Subject:** LS & Agile Com Plans

Hi Guys,
When you have rolled out the comp plan changes for 2019 can you let me know?

HR will be sending these out to all employees for sign off (we do this every year) and I don't want to send them everything until your employees are all notified of the changes.  We send them all at once for the entire company so I am holding everything back right now until these last 2 plans are rolled out.

Thanks!

**Melissa Kline**
Director of Accounting

**Eliassen Group | EG Life Sciences |**
**Eliassen Government Services**
55 Walkers Brook Dr, 6th Floor, Reading, MA  01867
D: 781.205.8160     T: 800.354.2773
C: 603.966.6849     F: 781.213.8160
W: www.eliassen.com



Date: 01/01/2019

# 2019 Comp Plan – Account Executives: Life Sciences

The following outlines the Recruiting compensation plan for Eliassen Group.

Commissions are paid out on total weekly spread dollars.
- Spread = Discounted Bill Rate – Loaded Pay Rate (Pay Rate + All Associated Burdens)
- Weekly Spread = All approved timesheets received within the pay period (Monday-Sunday)
  - Example:  Timesheet for week ending 4/7/19 is sent late and received on 4/25/19 – the commissions for this timesheet will be included in the commissions paid for pay period 4/28/19.

| Weekly Spread | Commission |
|---|---|
| $0 - $5,000.00 | 8% |
| $5,000.01 - $15,000.00 | 9% |
| $15,000.01 - $20,000.00 | 10% |
| $20,000.01 Plus | 12% |

A match is considered commission eligible if the following apply:
- Minimum spread dollars - $5
- Minimum spread percentage – 8%
- If spread $ = $8 then match will be commissionable regardless of spread %

Commissions are paid out 1 month in arrears.  Commissions are considered earned once the approved timesheet has been received.

Standard Burdens:
  - W2 Hourly – 17%
  - W2 Hourly Sick – 18%
  - W2 Salary – 33%
  - LLC – 5.65%
  - Inc – 5.65%
  - Shop – 5.65%

Additional Burdens:
  - Agile – 5%
  - Federal Government – 2%
  - FSP – 5%
  - H1B - $5 Year 1, $2 Year 2
  - Green Card - $6 Year 1, $2 Year 2+
  - TN - $1 Year 1+

Maintenance Commissions: When a reassignment of a current client is given to an existing AE, they may receive a maintenance commission on any current placements upon manager approval.
- Paid at a flat 2% commissions
- Must meet minimum commissionable requirements
- Will revert to full commission plan at time a rate change is done and the spread stays the same or increases

Client Lead Pass:
- $500 for a sales lead that results in a requisition that is filled within 12 months of the lead date, one per hiring manager
- Paid after consultant completes 30 days of work

Direct Hire/Conversion Placements:
- 100% spread credit
- 12.5% commission on spread credit
- Spread is credited to employee the month the consultants starts
- Commissions are paid once client pays invoice in full and the guarantee period has been met

Administrative Guidelines
1. The term and content of this Plan is effective January 1, 2019 through December 31, 2019 unless changed, modified or terminated by the Company.
2. Employees who leave the Company for any reason during the Plan year will be entitled only to commissions and bonuses earned through the date of termination.
3. Employees have 60 days to dispute any commission, bonus or fee payments. After 60 days, such payments are not subject to dispute or adjustment.
4. 2 week guarantees do not earn GM or pay-out any commissions. Any other "pay - no bill" will reduce GM and commission on the placement.
5. A stop entered into erecruit (ER) with a stop date from a prior month will result in a $50 fee charged to both the AE and Recruiter. There are no exceptions made to this policy.
6. Rate changes: When any consultant currently on billing has a rate change (either BR, PR or both), new loads will apply.
7. If an Account Executive acts as a Recruiter on a contract start, GM is not earned. Only commissions will be paid according to comp plan.
8. The Leadership Team shall have full authority to interpret, change, modify or terminate the Plan at any time. Their collaborative decision shall be final.
9. This Plan is NOT a contract of employment. All employees entitled to the benefits of this plan are employees "at will" of the Company.


_____          _____
PRINT NAME                                                                      DATE


_____
SIGNATURE

 ELIASSEN GROUP

Date: 01/01/2019

# 2019 Comp Plan – Recruiting: Bio & Life Sciences

The following outlines the Recruiting compensation plan for Eliassen Group.

Commissions are paid out on total weekly spread dollars.
- Spread = Discounted Bill Rate – Loaded Pay Rate (Pay Rate + All Associated Burdens)
- Weekly Spread = All approved timesheets received within the pay period (Monday-Sunday)
  - Example:  Timesheet for week ending 4/7/19 is sent late and received on 4/25/19 – the commissions for this timesheet will be included in the commissions paid for pay period 4/28/19.

| Weekly Spread | Commission |
|---|---|
| $0 - $5,000.00 | 8% |
| $5,000.01 - $15,000.00 | 9% |
| $15,000.01 - $20,000.00 | 10% |
| $20,000.01 Plus | 12% |

A match is considered commission eligible if the following apply:
- Minimum spread dollars - $5
- Minimum spread percentage – 8%
- If spread $ = $8 then match will be commissionable regardless of spread %

Commissions are paid out 1 month in arrears.  Commissions are considered earned once the approved timesheet has been received.

Standard Burdens:
- o  W2 Hourly – 17%
- o  W2 Hourly Sick – 18%
- o  W2 Salary – 33%
- o  LLC – 5.65%
- o  Inc – 5.65%
- o  Shop – 5.65%

Additional Burdens:
- o  Agile – 5%
- o  Federal Government – 2%
- o  FSP – 5%
- o  H1B - $5 Year 1, $2 Year 2
- o  Green Card - $6 Year 1, $2 Year 2+
- o  TN - $1 Year 1+

<u>Maintenance Commissions</u>: If ownership of a current consultant is reassigned to another recruiter, maintenance commission may be paid to the recruiter who assumes ownership of the consultant, upon manager approval.
- Paid at a flat 2% commissions
- Must meet minimum commissionable requirements
- Will revert to full commission plan at time a rate change is done and the spread stays the same or increases

<u>Sales Leads</u>:
- $50 for any lead that results in a requisition
- $750 for any requisition that becomes a start
- These must occur within the first 12 months of the lead pass date
- Paid after consultant has worked 30 days
- Max payout per lead is 3

<u>Direct Hire/Conversion Placements</u>:
- 100% spread credit
- 12.5% commission on spread credit
- Spread is credited to employee the month the consultants starts
- Commissions are paid once client pays invoice in full and the guarantee period has been met

<u>Administrative Guidelines</u>
1. The term and content of this Plan is effective January 1, 2019 through December 31, 2019 unless changed, modified or terminated by the Company.
2. Employees who leave the Company for any reason during the Plan year will be entitled only to commissions and bonuses earned through the date of termination.
3. Employees have 60 days to dispute any commission, bonus or fee payments. After 60 days, such payments are not subject to dispute or adjustment.
4. 2 week guarantees do not earn GM or pay-out any commissions. Any other "pay - no bill" will reduce GM and commission on the placement.
5. A stop entered into erecruit (ER) with a stop date from a prior month will result in a $50 fee charged to both the AE and Recruiter. There are no exceptions made to this policy.
6. Rate changes: When any consultant currently on billing has a rate change (either BR, PR or both), new loads will apply.
7. If an Account Executive acts as a Recruiter on a contract start, GM is not earned. Only commissions will be paid according to comp plan.
8. The Leadership Team shall have full authority to interpret, change, modify or terminate the Plan at any time. Their collaborative decision shall be final.
9. This Plan is NOT a contract of employment. All employees entitled to the benefits of this plan are employees "at will" of the Company.

_____          _____
PRINT NAME                                        DATE

_____
SIGNATURE

Case 1:19-cv-10470   Document 1-4   Filed 03/13/19   Page 8 of 10

# Eliassen Group 2019 Compensation Plan:  FSP Technical Recruiter Plan

## Commission Schedule

| Spread Percentage | Commission Percentage | | Spread Percentage | Commission Percentage |
|---|---|---|---|---|
| 30.01%+: | 10% | | 22.01% - 24.0%: | 5% |
| 27.01% - 30.0%: | 8% | | 20.01% - 22.0%: | 4% |
| 26.01% - 27.0%: | 7% | | 18.01% - 20.0%: | 3% |
| 24.01% - 26.0%: | 5% | | 10.01% - 18.0%: | 2% |
| | | | 10% and under: | Bucket credit - No commission |

Spread must equal or exceed $5 in order to receive commissions
"Pass Through's": $5.00 after loaded pay rate

| Load: W2 – 17% | Inc – 5.65% | Third Party – 5.65% | LLC – 5.65% | Salary – 33% |
|---|---|---|---|---|

Practice (FSP & Agile): 5% load in addition to any other load.  (All Pfizer starts are FSP unless approved otherwise by mgmt)
Pfizer: 2.5% load on the bill rate for all active matches
Health Insurance $1.00 hr / Sick Time: 1% load in addition to any other load

### Bonus Plan Paid Monthly – Perm starts are included

| Goal | $100,000 | $200,000 | $300,000 | $400,000 | $500,000 | $650,000 | $800,000 | $1,000,000 | $1,200,000 | $1,400,000 | $1,600,000 | $1,800,000 | $2,000,000 | $2,250,000 | $2,500,000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bonus | $100 | $200 | $300 | $400 | $500 | $600 | $700 | $800 | $900 | $1,000 | $1,100 | $1,300 | $2,500 | $4,000 | $5,000 |
| Cumulative | $100 | $300 | $600 | $1,000 | $1,500 | $2,100 | $2,800 | $3,600 | $4,600 | $5,800 | $7,500 | $10,000 | $14,000 | $19,000 | $35,000 |

Sales leads - $50 for any load that results in a req, and $350 for any req, that is filled and results in a start by Eliassen Group. The time frame for both the req and start is 12 months from the load pass date.  Paid after consultant successfully completes 30 days. Max payout per lead is 3.

## Maintenance Commissions:

- All headcount related to placements made through 12/31/17 will be paid at a designated maintenance % of 3%. Once headcount moves to maintenance there will be no GM credit.
- All headcount related to placements made under the FSP from 1/1/18 through 12/31/18 will be paid under the guidelines of the FSP Technical Recruiter Plan through 12/31/19 and on 1/1/20 all headcount will revert to the designated maintenance %.
- All headcount related to placements made from 1/1/19 through 12/31/19 will be paid under the guidelines of the FSP Technical Recruiter Plan through 12/31/20 and on 1/1/21 will revert to the designated maintenance %
- Once a consultant moves to maintenance designation they will remain on a maintenance commission for all future placements

* If the commission % on the existing headcount is lower than the designated maintenance %, payout will remain at the lower %

## Administrative Guidelines:

1. The term and content of this Plan is effective January 1, 2019 through December 31, 2019 unless changed, modified or terminated by the Company.
2. Employees who leave the Company for any reason during the Plan year will be entitled only to commissions and bonuses earned through the date of termination.  For Perm/Conversion fees will be paid only after the client's "guarantee period" has been met.
3. Employees have 60 days to dispute any commission, bonus or fee payments.  After 60 days, such payments are not subject to dispute or adjustment.
4. 2 week guarantees do not earn GM or pay-out any commissions.  Any other "pay – no bill" will reduce GM and commission on the placement.
5. A stop entered into e-recruit (ER) with a stop date from a prior month will result in a $50 fee charged to both the AE and Recruiter.
6. Rate changes: When any consultant currently on billing has a rate change (either BR, DL or both), the new loads will apply.
7. If a Recuiter acts as an Account Executive on a contract start, GM is not earned.  Only commissions will be paid according to comp plan.
8. The Leadership Team shall have full authority to interpret, change, modify or terminate the Plan at any time.  Their collaborative decision shall be final.
9. This Plan is NOT a contract of employment. All employees entitled to the benefits of this plan are employees "at will" of the Company.

_____    _____
PRINT NAME                                          DATE

_____
SIGNATURE

**From:** Dane Groeneveld <Dane.Groeneveld@PTSadvance.com>
**Sent:** Thursday, February 07, 2019 5:24 PM
**To:** Ken Spigle <KSpigle@eliassen.com>
**Cc:** JT Mann <JTMann@eliassen.com>
**Subject:** Re: PTS Advance New Hire: Former Eliassen Employee Glenn Haegle

Thank you Ken.

I appreciate you bringing this to my attention and I shall investigate accordingly.

We intend for Glenn to appropriately honor his commitments and will set the necessary controls in place to monitor this.

**Dane Groeneveld**
CEO


**PTS ADVANCE**

Direct: 949 268 4021
Cell: 832 205 0160

1

On Feb 7, 2019, at 1:35 PM, Ken Spigle <KSpigle@eliassen.com> wrote:

Dear Mr. Groeneveld:

Enclosed please find a letter from Eliassen Group, LLC's Vice President and General Counsel, Jonathan T. Mann, regarding Eliassen's former employee Glenn Haegle, recently hired by PTS Advance.

Thank you for your attention in this matter.

Kenneth Spigle

**Kenneth I. Spigle**
Associate Counsel

**Eliassen Group**
55 Walkers Brook Drive, 6th Floor, Reading, MA 01867
T: 781.295.6722 C: 617.504.6843
www.eliassen.com

LinkedIn:

<Letter to PTS Advance re Glenn Haegle February 7 2019.pdf>

2

# E

Secure Text Messaging - Ensure That No Matter Where You Are, Your Information Is Never Compromised.   Ad ⋯



Ac

Let LinkedIn find great candidates for you



Post a job in minutes

Start job post

## Jayne Gill · 2nd

Managing Director at PTS Advance (formerly PTS Staffing Solutions)

Greater Boston Area

Connect     🔒 Message     More...

 PTS Advance (formerly PTS Staffing Solutions)

United Kingdom

 See contact info

 500+ connections

**People Also Viewed**

**Glenn Haegle** · 2nd 🔗
Account Manager at PTS Advance (formerly PTS Staffing Solutions)

**Greg Coir** · 2nd 🔗
Executive Vice President

**Paul Hodgkinson**
API 510/570 Inspector at PTS Staff Solutions

**Lauren Luckenbach** · 3rd
Human Resources Coordinator at Advance

**Omar Omar** · 3rd
Managing Partner, Clinical Solutio Group, Inc. (CSG, Inc.)

**Jeanne Guzman Farias** · 3rd 🔗
Account Director Energy & Infastru - Gulf Coast at PTS Advance (form PTS Staffing Solutions)

**Dan Schreiber** · 3rd 🔗
Sr Business Development Manage Yoh, A Day & Zimmermann Comp

**Jarrett Wood** · 3rd
Vice President at SharpVue Capita

**Van Dinh, PHR** · 3rd
Operations Project Manager at He Credit Services

**Cynthia Adrean** · 3rd
Microbiology Solution Architect at

## Highlights

 **3 Mutual Connections**
You and Jayne both know Anthony Valente, CPA, David MacKeen, and 1 other

## Activity

781 followers

**Calling all Computer System Validation (CSV) Specialists! PTS Advance Life Sciences Division currently has multiple openings for...**
Jayne shared this

**Glad to be part of this growing team PTS Advance (formerly PTS Staffing Solutions)**
Jayne shared this

**Thank you Tim**
Jayne replied to a comment

**Thanks Mandy**
Jayne replied to a comment

See all

## Experience

**Managing Director**
PTS Advance (formerly PTS Staffing Solutions)
Feb 2019 – Present · 2 mos
Greater Boston Area

Jayne has 25 years experience in global consulting services. Jayne got her start in the Royal Air force before she began her civilian career, of which the majority has been spent in the Life Sciences industry. As the Managing Director she is responsible for operations and overall growth of the business.

Established in 1995, PTS Advance teams up with thousands of candidates, clients, and partners to advance workforce utilization in the Energy & Infrastructure and Life Sciences Industries.

PTS Advance provides people and tools to Energy & Infrastructure and Life Sciences companies that want to do more than... See more

Messaging   ✏️ ⚙️

**Managing Director**
EG Life Sciences
Aug 2010 – Jan 2019 · 8 yrs 6 mos

EG Life Sciences is a hybrid professional Life Sciences consulting firm that provides Pharmaceutical,
Biotechnology, and Medical device companies with the resources they need to meet the unique
challenges of FDA regulated industries, delivering value-driven consulting, project management and
project based staffing solutions. For more information, visit www.eglifesciences.com.
... See more

**Regional Vice President**
Validant Consulting
Sep 2009 – Jan 2011 · 1 yr 5 mos

**VP New England & New York**
Harvey Nash
2004 – Sep 2009 · 5 yrs

**Managing Director**
Spherion Technology
1998 – 2003 · 5 yrs

Show 1 more experience ⌄

Education

United Kingdom

Messaging   ✎ ⚙

Jayne Gill | LinkedIn

Messaging

# F





February 7, 2019

VIA EMAIL AND VIA UPS OVERNIGHT DELIVERY

Mr. Glenn Haegle
11917 Frost Aster Drive
Riverview, FL 33579

Re:   <u>Demand to Cease and Desist Violations of your Agreement With Eliassen Group</u>

Dear Mr. Haegle:

Eliassen Group LLC ("Eliassen") has learned that you have recently contacted a company with whom Eliassen has a contract in an attempt to reschedule a meeting that was set up for February 6 while you were an Eliassen employee, to a date in late February, on behalf of your new employer, PTS Advance. This is a serious violation of the "Agreement Governing Non-Competition Confidential Information and Trade Secrets" (the "2016 Agreement") that you signed on October 4, 2016 when you began your employment with Eliassen.

By this letter, Eliassen demands that you cease and desist from any and all efforts on behalf of PTS Advance (or any other competitor of Eliassen) to do business with or seek business from any persons, entities or corporations approached or solicited by you at any time during the eighteen (18) months prior to the termination of your employment with Eliassen, and that you also cease and desist from any and all other activities which violate your other obligations under the 2016 Agreement, including, without limitation, those contained in paragraphs 1 (Non-Compete Covenant), 2 (Non-Solicitation), and 3 (Non-Disclosure and Return of Confidential Information and Trade Secrets). A copy of the 2016 Agreement is attached to this letter.

In paragraph 2(a)(1) of the 2016 Agreement, you agreed that for a period of eighteen (18) months after leaving Eliassen, you would not, directly or indirectly, on behalf of any competing organization, "do business with or seek business from any persons, entities or corporations approached or solicited by [you] at any time during the eighteen (18) months prior to the termination of employment with Eliassen . . . ." Despite this clear prohibition, you contacted a Director at a Florida company that has a contract with Eliassen and that you had been communicating with during your last three months as an Eliassen employee, to reschedule a meeting in an effort to seek business from that company on behalf of PTS Advance.

Eliassen takes very seriously the obligations of its former employees, and, if necessary, is fully prepared to file suit against you seeking injunctive relief and damages for violations of the 2016 Agreement. Eliassen also takes very seriously efforts to wrongfully interfere with its contractual relationships with its former employees

55 Walkers Brook Drive
6th Floor
Reading, MA 01867
800.354.2773





Accordingly, as stated above, Eliassen demands that you cease and desist from any and all efforts on behalf of PTS Advance (or any other competitor of Eliassen) to do business with or seek business from any persons, entities or corporations approached or solicited by you at any time during the eighteen (18) months prior to the termination of your employment with Eliassen, and that you also cease and desist from any and all other activities which violate your other obligations under the 2016 Agreement.

Please confirm, with your signature below: (a) your assurance that you will not engage in any efforts on behalf of PTS Advance (or any other competitor of Eliassen) to do business with or seek business from any persons, entities or corporations approached or solicited by you at any time during the eighteen (18) months prior to the termination of your employment with Eliassen, and (b) your acknowledgement of your obligations under the 2016 Agreement and your assurance that you will abide by its terms.  Upon signing, please return a signed copy of this letter to Eliassen, no later than Tuesday, February 12, via email (addressed to JTMann@eliassen.com) or via overnight delivery, addressed to:

> Eliassen Group, LLC
> Attn: Legal Department
> 55 Walkers Brook, 6 Floor
> Reading, MA 01867

Eliassen reserves all rights to assert any and all claims available to it under applicable law, and nothing herein is a waiver of any such right or claim.

Should you have any questions regarding this matter, please do not hesitate to contact me.

Thank you.

Sincerely,

Jonathan T. Mann
Vice President & General Counsel

Enclosure

---

Acknowledged and Agreed to by Glenn Haegle

By:_____     Date:_____

Print name:_____

55 Walkers Brook Drive
6th Floor
Reading, MA 01867
800.354.2773

 

## AGREEMENT GOVERNING NON-COMPETITION
## CONFIDENTIAL INFORMATION AND TRADE SECRETS

THIS AGREEMENT IS MADE EFFECTIVE THE 4th of October, 2016 by and between Eliassen Group, LLC, ("Eliassen") and Glenn Haegle ("Employee").

WHEREAS Employee acknowledges that as a result of his/her employment, he/she has access to and knowledge of confidential, proprietary information belonging to Eliassen and/or trade secrets of Eliassen, including such information as the identity of clients and customers of Eliassen and consultants utilized by Eliassen and clients and customers of Eliassen, and

WHEREAS Employee acknowledges that it would be unfair to use such access to or knowledge of confidential and proprietary information belonging to Eliassen and/or trade secrets of Eliassen to compete with Eliassen;

NOW THEREFORE, in consideration of Employee's Employment and/or continued Employment, and other good and valuable consideration, Employee and Eliassen agree as follows:

**1. Non-Compete Covenant:**
Employee agrees that upon the termination of Employee's employment, whether by Eliassen or Employee and whether with or without cause, for a period of one (1) year thereafter Employee shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of Eliassen's business in which Employee performed worked during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which Employee worked at the time Employee's employment terminated or any other office in which Employee worked during the two (2) years preceding termination of employment, or as much geographic territory as a court of competent jurisdiction deems reasonable. The prohibitions contained in this paragraph shall extend to (i) activities undertaken by Employee directly on Employee's own behalf, and to (ii) activities undertaken by Employee indirectly through any individual, corporation or entity which undertakes such prohibited activities with Employee's assistance and in or with respect to which Employee is an owner, officer, director, trustee shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

**2. Non-Solicitation**
(a) For so long as Employee is employed by Eliassen and for a period of eighteen (18) months after the termination of Employee's employment for any reason whatsoever, whether voluntarily or involuntarily, Employee shall not, without prior express written consent of Eliassen, directly or indirectly, whether as an employee, officer, trustee, consultant, owner, partner, co-venturer, agent, advisor or otherwise, on behalf of any "competing organization": 1) do business with or seek business from any persons, entities or corporations approached or solicited by Employee at any time during the eighteen (18) months prior to the termination of employment with Eliassen, and/or 2) do business with or seek business from any persons, entities or corporations located in any county in which Employee approached customers or solicited business at any time during the eighteen (18) months prior to the termination of employment with Eliassen. For purposes of this agreement, a "competing organization" shall be any business involved in the same or substantially similar business as Eliassen or which competes in any way with the business of Eliassen, either directly or indirectly as a contractor or subcontractor. Employee further acknowledges that to the extent Employee is engaged in sales and/or dealings with customers, Employee develops substantial good will on behalf of Eliassen by dealing with customers. Such customer good will is, in all instances, the property of Eliassen. Employee further acknowledges that any solicitation of customers in violation of this agreement would be a misappropriation of customer good will to the substantial detriment of Eliassen.

(b) Employee agrees that he/she shall not, for a period of eighteen (18) months from the date his/her employment with Eliassen terminates, solicit any contract or award, or accept any contract or award for work, or perform any service individually or on behalf of any competing organization, on any project that Employee worked

on any time during her/his Employment with Eliassen. Employee also agrees that he/she shall not solicit, recruit to work, or employ any consultant or employee of Eliassen in any capacity whatsoever, either directly or indirectly, for a period of eighteen (18) months after the Employee leaves the employment of Eliassen.

### 3. Non-Disclosure and Return of Confidential Information and Trade Secrets

Employee agrees that during or after the term of his/her employment with Eliassen, he/she shall not at any time disclose to others or use for his/her own benefit any trade secrets or confidential information pertaining to the business of Eliassen or any of its customers, representatives, agents, consultants, licensees, or affiliates. Employee further agrees that upon termination of his/her employment with Eliassen for any reason whatsoever he/she shall immediately return to Eliassen all property and confidential information of Eliassen. The term "confidential information," as used in this paragraph, shall include, but is not limited to, trade secrets, including all writings, notes, studies and reports prepared, compiled or acquired by Employee during the course of his/her employment; customer lists; consultant lists; pricing information; marketing techniques; documentation of business plans and opportunities; financial statements; specialized customer information concerning unique, novel or specific purchasing habits; marketing plans or projections; information relating to any special products and services that Eliassen may offer or provide to its customers or consultants from time to time; and any data or information maintained or compiled in any form, including information contained on computer disks, that is not generally known to the public. Employee further agrees that the term "confidential information" also includes the form, method and amounts of any and all sums paid to Employee by Eliassen, and Employee agrees not to disclose any details of or about such payments to anyone inside or outside of Eliassen.

### 4. Remedy for Breach

In the event of a breach or threatened breach of this agreement, Eliassen shall be entitled to a preliminary and/or permanent injunction restraining such breach. It is further agreed that, in consideration of the difficulties that accompany estimating the damage resulting from a breach of this agreement by Employee, Eliassen may, at its discretion, elect either (1) to receive the sum of $100.00 as liquidated damages for each day Employee is in breach of the agreement, or (2) to prove and recover actual damages caused by any such breach(es). Eliassen shall further be entitled to recover all attorneys' fees and expenses reasonably incurred in establishing any breach of the agreement. These damages, attorneys' fees and expenses shall be in addition to, and not in lieu of, any preliminary and/or permanent injunctive relief that may be available to Eliassen. Employee further agrees and acknowledges that the running of the period of restriction set forth in paragraphs one (1) and two (2) shall be tolled (i.e. shall not run) during any time frame in which Employee violates the provisions of this agreement.

### 5. Waiver of Breach

The waiver by Eliassen of a breach of any provision of this agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee. No waiver shall be valid unless in writing and signed by an authorized officer of Eliassen.

### 6. Governing Law

Eliassen and Employee expressly agree that the provisions of this Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts.

### 7. Employment At Will

Nothing in this agreement shall be construed as a promise or agreement of any kind, express or implied, of employment for any specific duration.

### 8. Entire Agreement

This agreement constitutes the entire agreement and understanding between the parties with regard to all matters herein and supersedes any agreement that may have been previously entered into regarding the subject matter of this agreement. There are no other agreements, conditions or representations, oral or written, express or implied, with regard to all matters herein. This agreement may not be changed orally, but only by an agreement in writing executed by the party against whom enforcement of any waiver, change, modification, extension, addition or discharge is sought.



### 9. Severability

In the event one or more of the provisions in this agreement is held invalid, illegal or unenforceable in any respect, such a holding shall not affect any other provisions of this agreement. Further, if any provision of this agreement shall be held to be excessively broad as to time, duration, geographic scope, activity or subject, it shall be construed by limiting and reducing it so as to be enforceable to the greatest extent permitted by law.

### 10. Acknowledgment of Voluntariness and Consideration

Employee acknowledges that he understands the provisions of this agreement, that the agreement is entered into knowingly and voluntarily, and that Employee has been afforded a sufficient amount of time to consider the agreement and to consult with and seek the advice of any person of Employee's choosing, including an attorney. Employee further acknowledges that any employment Employee has with Eliassen after the date on which this agreement is executed is adequate and sufficient consideration to support the agreement.

### 11. Survival

The terms and conditions of this agreement shall survive any changes made in the future to the employment terms of employee including, but not limited to, changes in the salary, benefits, bonus plans, job title and job responsibilities.

### 12. Notice to Future Employers

For a period of eighteen (18) months after cessation of Employee's employment with Eliassen, Employee will inform each new employer or potential employer, prior to accepting employment, of the existence and details of this agreement, and provide that employer or potential employer a copy of this agreement. Employee also authorizes Eliassen to notify any such employer or potential employer of the existence and details of this agreement, including providing a copy of the agreement. This section shall also apply in the event Employee seeks employment with another employer while employed by Eliassen.

### 13. Assignment

Employee agrees and hereby consents that Eliassen may assign this Agreement to an affiliate of Eliassen or in connection with a sale or transfer of all or substantially all of its business irrespective of whether the sale or transfer occurs by way of change of control, sale of assets, sale of stock or merger. In the event of assignment to an affiliate or sale or transfer of the business, this Agreement shall be deemed assigned or transferred to such successor in interest automatically and without further action by Eliassen or Employee.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals to this agreement governing non-competition, confidential information and trade secrets as set forth below.

ELIASSEN GROUP, LLC

By: _____

Name: Jonathan T. Mann
Title: Vice President & General Counsel
Date: 10/7/2016

Address: 30 Audubon Road
          Wakefield, MA 01880
Phone: 781-451-6412
Fax: 781-213-8210

Glenn Haegle

By: _____

Date: 10/6/16

Address: 11917 Frost Aster Dr.
          Riverview, FL 33579
Phone: 603-801-4093
Email: ghaegle@gmail.com

 

February 7, 2019

VIA EMAIL AND VIA UPS OVERNIGHT DELIVERY

Dane Groeneveld, CEO
PTS Advance
2860 Michelle Drive, Suite 150
Irving, CA  92606

Re:   PTS Advance New Hire: Former Eliassen Employee Glenn Haegle

Dear Mr. Groeneveld:

Eliassen Group LLC ("Eliassen") has learned that Glenn Haegle, who was employed as a Client Services Manager in Eliassen's Life Sciences group[1] until  he resigned on February 4, 2019, is now working for PTS Advance.  He has already attempted to reschedule a February 6 meeting with a company with whom Eliassen has a contract, previously set up while he was an Eliassen employee, for a date later this month, on behalf of PTS Advance.  This conduct is a serious violation of the "Agreement Governing Non-Competition Confidential Information and Trade Secrets" (the "2016 Agreement") that Mr. Haegle signed on October 4, 2016 when he began his employment with Eliassen.

I am writing to give PTS Advance formal notice of the existence and terms of Mr. Haegle's 2016 Agreement with Eliassen and of his obligations thereunder, and to request that PTS Advance immediately take all appropriate measures to insure that Mr. Haegle will cease and desist from violating his obligations under the 2016 Agreement.

In paragraph 2(a)(1) of the 2016 Agreement (a copy of which is attached to this letter), Mr. Haegle agreed that for a period of eighteen (18) months after leaving Eliassen, he would not, directly or indirectly, on behalf of any competing organization,  "do business with or seek business from any persons, entities or corporations approached or solicited by [him] at any time during the eighteen (18) months prior to the termination of employment with Eliassen . . . ."  Despite this clear prohibition, Eliassen has learned Mr. Haegle has recently contacted a Director at a Florida company that he had been seeking to do business with for his last three months as an Eliassen employee, to reschedule a meeting set up while he was an Eliassen employee, in an effort to seek business from that company on behalf of PTS Advance.

Eliassen takes very seriously the obligations of its former employees, and, if necessary, is fully prepared to file suit against Mr. Haegle seeking injunctive relief and damages for violations of the 2016

---

[1]  Eliassen Group, LLC, is the sole owner and the Manager of EG Life Sciences, LLC, which was formed in 2015 to provide services to customers of Eliassen Group, LLC's Life Sciences Division.  Mr. Haegle was an employee of Eliassen Group, LLC from the time he was initially hired in October, 2016, through the day he resigned, on February 4, 2019.

55 Walkers Brook Drive
6th Floor
Reading, MA 01867
800.354.2773

 

Agreement, and to take other legal action to protect its interests. . Eliassen also takes very seriously efforts to wrongfully interfere with its contractual relationships with its former employees.

Accordingly, Eliassen asks PTS Advance to confirm, by your signature below: (a) that it will take appropriate measures, immediately, to insure that Mr. Haegle will abide by all of the terms of the 2016 Agreement with Eliassen; (b) that it will direct and instruct Mr. Haegle that he should not engage in any activities which violate the 2016 Agreement; and (c) that it will inform Eliassen promptly if it becomes aware of any conduct engaged in by Mr. Haegle which is inconsistent with his obligations under the 2016 Agreement.

Upon signing, please return a signed copy of this letter to Eliassen, no later than Tuesday, February 12, via email (addressed to JTMann@eliassen.com) or via overnight delivery, addressed to:

> Eliassen Group, LLC
> Attn: Legal Department
> 55 Walkers Brook, 6 Floor
> Reading, MA 01867

Eliassen reserves all rights to assert any and all claims available to it under applicable law, and nothing herein is a waiver of any such right or claim.

Should you have any questions regarding this matter, please do not hesitate to contact me.

Thank you.

Sincerely,

Jonathan T. Mann
Vice President & General Counsel

cc: Mr. Glenn Haegle
Enclosure

Acknowledged and Agreed to by PTS Advance

By:_____     Date:_____

Print name:_____

Title:_____

55 Walkers Brook Drive
6th Floor
Reading, MA 01867
800.354.2773

# G

**From:** Dane Groeneveld <Dane.Groeneveld@PTSadvance.com>
**Sent:** Thursday, February 07, 2019 5:24 PM
**To:** Ken Spigle <KSpigle@eliassen.com>
**Cc:** JT Mann <JTMann@eliassen.com>
**Subject:** Re: PTS Advance New Hire: Former Eliassen Employee Glenn Haegle

Thank you Ken.

I appreciate you bringing this to my attention and I shall investigate accordingly.

We intend for Glenn to appropriately honor his commitments and will set the necessary controls in place to monitor this.

**Dane Groeneveld**
CEO


**PTS ADVANCE**

Direct: 949 268 4021
Cell: 832 205 0160

1

On Feb 7, 2019, at 1:35 PM, Ken Spigle <KSpigle@eliassen.com> wrote:

Dear Mr. Groeneveld:

Enclosed please find a letter from Eliassen Group, LLC's Vice President and General Counsel, Jonathan T. Mann, regarding Eliassen's former employee Glenn Haegle, recently hired by PTS Advance.

Thank you for your attention in this matter.

Kenneth Spigle

**Kenneth I. Spigle**
Associate Counsel

**Eliassen Group**
55 Walkers Brook Drive, 6th Floor, Reading, MA 01867
T: 781.295.6722 C: 617.504.6843
www.eliassen.com

LinkedIn:

<Letter to PTS Advance re Glenn Haegle February 7 2019.pdf>

# H

 

**ELIASSEN GROUP®**
Your Success, Our Talent

February 8, 2019

VIA EMAIL AND VIA UPS OVERNIGHT DELIVERY

Ms. Jayne Gill
11 Aspen Lane
Bedford, NH 03110

Re:   Reminder Regarding Continuing Obligations to Eliassen

Dear Jayne:

In connection with the termination of your employment with Eliassen Group, LLC ("Eliassen"), and your new position as an employee with PTS Advance, I would like to remind you of your continuing obligations under the "Agreement Governing Non-Competition Confidential Information and Trade Secrets" (the "2010 Agreement"), which you signed in August, 2010, at the beginning of your employment at Eliassen.

A copy of the 2010 Agreement is attached to this letter, and the specific details of all of your obligations are spelled out therein.  These include, without limitation:

- A covenant restricting you, for an 18-month period, from doing business or attempting to do business with entities you dealt with during your last eighteen (18) months as an Eliassen employee (paragraph 1);
- An 18-month non-solicitation restriction, in which you agreed not to solicit or perform work on any project you worked on at any time during your employment with Eliassen, and in which you also agreed not to solicit or recruit any Eliassen consultant or employee (paragraph 2); and
- A requirement not to disclose any trade secrets of confidential information pertaining to the business of Eliassen or any of its customers (paragraph 3).

Given your role as Senior Director in Eliassen's Life Sciences group, and based on the fact that one of your colleagues has also left Eliassen's employ to work for PTS Advance, Eliassen is particularly concerned that you should not participate, directly or indirectly, in any efforts to solicit or recruit Eliassen employees to go to work for PTS Advance.

Eliassen reserves all rights to assert any and all claims available to it under applicable law, and nothing herein is a waiver of any such right or claim.  Should you have any questions regarding this matter, please do not hesitate to contact me.

Thank you.

Sincerely,

Jonathan T. Mann
Vice President & General Counsel

Enclosure

55 Walkers Brook Drive
6th Floor
Reading, MA 01867
800.354.2773

 

## AGREEMENT GOVERNING NON-COMPETITION
## CONFIDENTIAL INFORMATION AND TRADE SECRETS

THIS AGREEMENT MADE EFFECTIVE THE 5<sup></sup> DAY OF August, 2010, by and between Eliassen Group,LLC, ("Eliassen") and Jayne Gill, (the "Employee").

WHEREAS Employee acknowledges that as a result of her employment, she has access to and knowledge of confidential, proprietary information belonging to Eliassen and/or trade secrets of Eliassen, including such information as the identity of clients and customers of Eliassen and consultants utilized by Eliassen and clients and customers of Eliassen, and

WHEREAS Employee acknowledges that it would be unfair to use such access to or knowledge of confidential and proprietary information belonging to Eliassen and/or trade secrets of Eliassen to compete with Eliassen;

NOW THEREFORE, in consideration of Employee's Employment and/or continued Employment, and other good and valuable consideration, Employee and Eliassen agree as follows:

### 1. Restrictive Covenant

For so long as Employee is employed by Eliassen and for a period of eighteen (18) months after the termination of Employee's employment for any reason whatsoever, whether voluntarily or involuntarily, Employee shall not, without prior express written consent of Eliassen, directly or indirectly, whether as an employee, officer, trustee, consultant, owner, partner, co-venturer, agent, advisor or otherwise, on behalf of any "competing organization": 1) do business with or seek business from any persons, entities or corporations approached or solicited by Employee at any time during the eighteen (18) months prior to the termination of employment with Eliassen, and/or 2) do business with or seek business from any persons, entities or corporations located in any county in which Employee approached customers or solicited business at any time during the eighteen (18) months prior to the termination of employment with Eliassen. For purposes of this agreement, a "competing organization" shall be any business involved in the same or substantially similar business as Eliassen or which competes in any way with the business of Eliassen, either directly or indirectly as a contractor or subcontractor. Employee further acknowledges that to the extent Employee is engaged in sales and/or dealings with customers, Employee develops substantial good will or behalf of Eliassen by dealing with customers. Such customer good will is, in all instances, the property of Eliassen. Employee further acknowledges that any solicitation of customers in violation of this agreement would be a misappropriation of customer good will to the substantial detriment of Eliassen.

### 2. Non-Solicitation

Employee agrees that she shall not, for a period of eighteen (18) months from the date her employment with Eliassen terminates, solicit any contract or award, or accept any contract or award for work, or perform any service individually or on behalf of any competing organization, on any project that Employee worked on any time during her Employment with Eliassen. Employee also agrees that she shall not solicit, recruit to work, or employ any consultant or employee of Eliassen in any capacity whatsoever, either directly or indirectly, for a period of eighteen (18) months after the Employee leaves the employment of Eliassen.

 

### 3. Non-Disclosure and Return of Confidential Information and Trade Secrets

Employee agrees that during or after the term of her employment with Eliassen, she shall not at any time disclose to others or use for her own benefit any trade secrets or confidential information pertaining to the business of Eliassen or any of its customers, representatives, agents, consultants, licensees, or affiliates. Employee further agrees that upon termination of her employment with Eliassen for any reason whatsoever she shall immediately return to Eliassen all property and confidential information of Eliassen. The term "confidential information," as used in this paragraph, shall include, but is not limited to, trade secrets, including all writings, notes, studies and reports prepared, compiled or acquired by Employee during the course of her employment, customer lists; consultant lists; pricing information, marketing techniques; documentation of business plans and opportunities, financial statements; specialized customer information concerning unique, novel or specific purchasing values; marketing plan or projections; information relating to any special products and services that Eliassen may offer or provide to its customers or consultants from time to time; and any data or information maintained or compiled in any form, including information contained on computer disks, that is not generally known to the public. Employee further agrees that the term "confidential information" also includes the form, method and amounts of any and all sums paid to Employee by Eliassen, and Employee agrees not to disclose any details of or about such payments to anyone inside or outside of Eliassen.

### 4. Remedy for Breach

In the event of a breach or threatened breach of this agreement, Eliassen shall be entitled to a preliminary and/or permanent injunction restraining such breach. It is further agreed that, in consideration of the difficulties that accompany estimating the damage resulting from a breach of this agreement by Employee, Eliassen may, at its discretion, elect either (1) to receive the sum of $100.00 as liquidated damages for each day Employee is in breach of the agreement, or (2) to prove and recover actual damages caused by any such breach(es). Eliassen shall further be entitled to recover all attorneys' fees and expenses reasonably incurred in establishing any breach of the agreement. These damages, attorneys' fees and expenses shall be in addition to, and not in lieu of, any preliminary and/or permanent injunctive relief that may be available to Eliassen. Employee further agrees and acknowledges that the running of the period of restriction set forth in paragraphs one (1) and two (2) shall be tolled (i.e. shall not run) during any time frame in which Employee violates the provisions of this agreement.

### 5. Waiver of Breach

The waiver by Eliassen of a breach of any provision of this agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee. No waiver shall be valid unless in writing and signed by an authorized officer of Eliassen.

### 6. Governing Law

Eliassen and Employee expressly agree that the provisions of this Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts.

### 7. Employment At Will

Nothing in this agreement shall be construed as a promise or agreement of any kind, express or implied, of employment for any specific duration.

### 8. Entire Agreement

This agreement constitutes the entire agreement and understanding between the parties with regard to all matters herein and supersedes any agreement that may have been previously entered into regarding the subject matter of this agreement. There are no other agreements, conditions or representations, oral or written, express or implied, with regard to all matters herein. This agreement may not be changed orally, but only by an agreement in writing executed by the party against whom enforcement of any waiver, change, modification, extension, addition or discharge is sought.

 

#### 9. Severability

In the event one or more of the provisions in this agreement is held invalid, illegal or unenforceable in any respect, such a holding shall not affect any other provisions of this agreement. Further, if any provision of this agreement shall be held to be excessively broad as to time, duration, geographic scope, activity or subject, it shall be construed by limiting and reducing it so as to be enforceable to the greatest extent permitted by law.

#### 10. Acknowledgment of Voluntariness and Consideration

Employee acknowledges that she understands the provisions of this agreement, that the agreement is entered into knowingly and voluntarily, and that Employee has been afforded a sufficient amount of time to consider the agreement and to consult with and seek the advice of any person of Employee's choosing, including an attorney. Employee further acknowledges that any employment Employee has with Eliassen after the date on which this agreement is executed is adequate and sufficient consideration to support the agreement.

#### 11. Survival

The terms and conditions of this agreement shall survive any changes made in the future to the employment terms of employee including, but not limited to, changes in the salary, benefits, bonus plans, job title and job responsibilities.

#### 12. Notice to Future Employers

For a period of eighteen (18) months after cessation of Employee's employment with Eliassen, Employee will inform each new employer or potential employer, prior to accepting employment, of the existence and details of this agreement, and provide that employer or potential employer a copy of this agreement. Employee also authorizes Eliassen to notify any such employer or potential employer of the existence and details of this agreement, including providing a copy of the agreement. This section shall also apply in the event Employee seeks employment with another employer while employed by Eliassen.

#### 13. Assignment

Employee agrees and hereby consents that Eliassen may assign this Agreement to an affiliate of Eliassen or in connection with a sale or transfer of all or substantially all of its business irrespective of whether the sale or transfer occurs by way of change of control, sale of assets, sale of stock or merger. In the event of assignment to an affiliate or sale or transfer of the business, this Agreement shall be deemed assigned or transferred to such successor in interest automatically and without further action by Eliassen or Employee.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals to this agreement governing non-competition, confidential information and trade secrets as set forth below.

ELIASSEN GROUP, LLC

By

John Segally, Director of Human Resources
Address:
   30 Audubon Road
   Wakefield, MA 01880
Phone #: 781-246-1600     Fax #: 781-213-8163

Date: 8/09/10

EMPLOYEE:

Jayne Gill

Address: __ 57 Aspen Lane __
   Bedford   NH   03110

Phone #: 617 hereunde  Fax #: _____
Date: 8/5/10

I

 

February 8, 2019

VIA EMAIL AND VIA UPS OVERNIGHT DELIVERY

Dane Groeneveld, CEO
PTS Advance
2860 Michelle Drive, Suite 150
Irving, CA  92606

Re:    <u>PTS Advance New Hire: Former Eliassen Employee Jayne Gill</u>

Dear Mr. Groeneveld:

Eliassen Group LLC ("Eliassen") has learned that Jayne Gill, who was employed as a Senior Director in Eliassen's Life Sciences group[1] until she resigned on February 4, 2019, is now working for PTS Advance. I am writing to give PTS Advance formal notice of the existence and terms of Ms. Gill's "Agreement Governing Non-Competition Confidential Information and Trade Secrets" (the "2010 Agreement"), which she signed in August, 2010, at the beginning of her employment at Eliassen, and to request that PTS Advance confirm its intention that Ms. Gill will honor her commitments as set forth in the 2010 Agreement.

At this time, Eliassen in not aware of any conduct by Ms. Gill which is inconsistent with her obligations under the terms of the 2010 Agreement, a copy of which is attached to this letter.  These obligations include, without limitation, the following:

- A covenant restricting her, for an 18-month period, from doing business or attempting to do business with entities she dealt with during her last eighteen (18) months as an Eliassen employee (paragraph 1);
- An 18-month non-solicitation restriction, in which she agreed not to solicit or perform work on any project she worked on at any time during her employment with Eliassen, and in which she also agreed not to solicit or recruit any Eliassen consultant or employee (paragraph 2); and
- A requirement not to disclose any trade secrets of confidential information pertaining to the business of Eliassen or any of its customers (paragraph 3).

---

[1]  Eliassen Group, LLC, is the sole owner and the Manager of EG Life Sciences, LLC, which was formed in 2015 to provide services to customers of Eliassen Group, LLC's Life Sciences Division.  Ms. Gill was an employee of Eliassen Group, LLC from the time she was initially hired in August, 2010, through the day she resigned, on February 4, 2019.

55 Walkers Brook Drive
6th Floor
Reading, MA 01867
800.354.2773




Given her role as Senior Director in Eliassen's Life Sciences group, and based on the fact that one of her colleagues has also left Eliassen's employ to work for PTS Advance, Eliassen is particularly concerned that Ms. Gill should not participate, directly or indirectly, in any efforts to solicit or recruit Eliassen employees to go to work for PTS Advance.

Eliassen asks PTS Advance to acknowledge receipt of this letter and the attached copy of the 2010 Agreement, and to confirm that it is PTS Advance's intention that Ms. Gill will honor her commitments as set forth in the 2010 Agreement. We would appreciate receiving such acknowledgement and confirmation by the close of business on Friday, February 15, either via email (addressed to JTMann@eliassen.com), or by letter, addressed to:

> Eliassen Group, LLC
> Attn: Legal Department
> 55 Walkers Brook, 6 Floor
> Reading, MA 01867

Eliassen reserves all rights to assert any and all claims available to it under applicable law, and nothing herein is a waiver of any such right or claim.

Should you have any questions regarding this matter, please do not hesitate to contact me.

Thank you.

Sincerely,

Jonathan T. Mann
Vice President & General Counsel

cc: Ms. Jayne Gill
Enclosure

55 Walkers Brook Drive
6th Floor
Reading, MA 01867
800.354.2773

 

## AGREEMENT GOVERNING NON-COMPETITION
## CONFIDENTIAL INFORMATION AND TRADE SECRETS

THIS AGREEMENT MADE EFFECTIVE THE 5th DAY OF August, 2010, by and between Eliassen Group,LLC. ("Eliassen") and Jayne Gill, (the "Employee").

WHEREAS Employee acknowledges that as a result of her employment, she has access to and knowledge of confidential, proprietary information belonging to Eliassen and/or trade secrets of Eliassen, including such information as the identity of clients and customers of Eliassen and consultants utilized by Eliassen and clients and customers of Eliassen, and

WHEREAS Employee acknowledges that it would be unfair to use such access to or knowledge of confidential and proprietary information belonging to Eliassen and/or trade secrets of Eliassen to compete with Eliassen;

NOW THEREFORE, in consideration of Employer's Employment and/or continued Employment, and other good and valuable consideration, Employee and Eliassen agree as follows:

### 1. Restrictive Covenant

For so long as Employee is employed by Eliassen and for a period of eighteen (18) months after the termination of Employee's employment for any reason whatsoever, whether voluntarily or involuntarily, Employee shall not, without prior express written consent of Eliassen, directly or indirectly, whether as an employee, officer, trustee, consultant, owner, partner, co-venturer, agent, advisor or otherwise, on behalf of any "competing organization": 1) do business with or seek business from any persons, entities or corporations approached or solicited by Employee at any time during the eighteen (18) months prior to the termination of employment with Eliassen, and/or 2) do business with or seek business from any persons, entities or corporations located in any county in which Employee approached customers or solicited business at any time during the eighteen (18) months prior to the termination of employment with Eliassen. For purposes of this agreement, a "competing organization" shall be any business involved in the same or substantially similar business as Eliassen or which competes in any way with the business of Eliassen, either directly or indirectly as a contractor or subcontractor. Employee further acknowledges that to the extent Employee is engaged in sales and/or dealings with customers, Employee, develops substantial good will or behalf of Eliassen by dealing with customers. Such customer good will is, in all instances, the property of Eliassen. Employee further acknowledges that any solicitation of customers in violation of this agreement would be a misappropriation of customer good will to the substantial detriment of Eliassen.

### 2. Non-Solicitation

Employee agrees that she shall not, for a period of eighteen (18) months from the date her employment with Eliassen terminates, solicit any contract or award, or accept any contract or award for work, or perform any service individually or on behalf of any competing organization, on any project that Employee worked on any time during her Employment with Eliassen. Employee also agrees that she shall not solicit, recruit to work, or employ any consultant or employee of Eliassen in any capacity whatsoever, either directly or indirectly, for a period of eighteen (18) months after the Employee leaves the employment of Eliassen.

 

### 3. Non-Disclosure and Return of Confidential Information and Trade Secrets

Employee agrees that during or after the term of her employment with Eliassen, she shall not at any time disclose to others or use for her own benefit any trade secrets or confidential information pertaining to the business of Eliassen or any of its customers, representatives, agents, consultants, licensees, or affiliates. Employee further agrees that upon termination of her employment with Eliassen for any reason whatsoever she shall immediately return to Eliassen all property and confidential information of Eliassen. The term "confidential information," as used in this paragraph, shall include, but is not limited to, trade secrets, including all writings, notes, studies and reports prepared, compiled or acquired by Employee during the course of her employment, customer lists; consultant lists; pricing information, marketing techniques; documentation of business plans and opportunities, financial statements; specialized customer information concerning unique, novel or specific purchasing values; marketing plans or projections; information relating to any special products and services that Eliassen may offer or provide to its customers or consultants from time to time; and any data or information maintained or compiled in any form, including information contained on computer disks, that is not generally known to the public. Employee further agrees that the term "confidential information" also includes the form, method and amounts of any and all sums paid to Employee by Eliassen, and Employee agrees not to disclose any details of or about such payments to anyone inside or outside of Eliassen.

### 4. Remedy for Breach

In the event of a breach or threatened breach of this agreement, Eliassen shall be entitled to a preliminary and/or permanent injunction restraining such breach. It is further agreed that, in consideration of the difficulties that accompany estimating the damage resulting from a breach of this agreement by Employee, Eliassen may, at its discretion, elect either (1) to receive the sum of $100.00 as liquidated damages for each day Employee is in breach of the agreement, or (2) to prove and recover actual damages caused by any such breach(es). Eliassen shall further be entitled to recover all attorneys' fees and expenses reasonably incurred in establishing any breach of the agreement. These damages, attorneys' fees and expenses shall be in addition to, and not in lieu of, any preliminary and/or permanent injunctive relief that may be available to Eliassen. Employee further agrees and acknowledges that the running of the period of restriction set forth in paragraphs one (1) and two (2) shall be tolled (i.e. shall not run) during any time frame in which Employee violates the provisions of this agreement.

### 5. Waiver of Breach

The waiver by Eliassen of a breach of any provision of this agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee. No waiver shall be valid unless in writing and signed by an authorized officer of Eliassen.

### 6. Governing Law

Eliassen and Employee expressly agree that the provisions of this Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts.

### 7. Employment At Will

Nothing in this agreement shall be construed as a promise or agreement of any kind, express or implied, of employment for any specific duration.

### 8. Entire Agreement

This agreement constitutes the entire agreement and understanding between the parties with regard to all matters herein and supersedes any agreement that may have been previously entered into regarding the subject matter of this agreement. There are no other agreements, conditions or representations, oral or written, express or implied, with regard to all matters herein. This agreement may not be changed orally, but only by an agreement in writing executed by the party against whom enforcement of any waiver, change, modification, extension, addition or discharge is sought.




**9. Severability**

In the event one or more of the provisions in this agreement is held invalid, illegal or unenforceable in any respect, such a holding shall not affect any other provisions of this agreement. Further, if any provision of this agreement shall be held to be excessively broad as to time, duration, geographic scope, activity or subject, it shall be construed by limiting and reducing it so as to be enforceable to the greatest extent permitted by law.

**10. Acknowledgment of Voluntariness and Consideration**

Employee acknowledges that she understands the provisions of this agreement, that the agreement is entered into knowingly and voluntarily, and that Employee has been afforded a sufficient amount of time to consider the agreement and to consult with and seek the advice of any person of Employee's choosing, including an attorney. Employee further acknowledges that any employment Employee has with Eliassen after the date on which this agreement is executed is adequate and sufficient consideration to support the agreement.

**11. Survival**

The terms and conditions of this agreement shall survive any changes made in the future to the employment terms of employee including, but not limited to, changes in the salary, benefits, bonus plans, job title and job responsibilities.

**12. Notice to Future Employers**

For a period of eighteen (18) months after cessation of Employee's employment with Eliassen, Employee will inform each new employer or potential employer, prior to accepting employment, of the existence and details of this agreement, and provide that employer or potential employer a copy of this agreement. Employee also authorizes Eliassen to notify any such employer or potential employer of the existence and details of this agreement, including providing a copy of the agreement. This section shall also apply in the event Employee seeks employment with another employer while employed by Eliassen.

**13. Assignment**

Employee agrees and hereby consents that Eliassen may assign this Agreement to an affiliate of Eliassen or in connection with a sale or transfer of all or substantially all of its business irrespective of whether the sale or transfer occurs by way of change of control, sale of assets, sale of stock or merger. In the event of assignment to an affiliate or sale or transfer of the business, this Agreement shall be deemed assigned or transferred to such successor in interest automatically and without further action by Eliassen or Employee.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals to this agreement governing non-competition, confidential information and trade secrets as set forth below.

ELIASSEN GROUP, LLC

By _____

John Segalla, Director of Human Resources
Address:
    30 Audubon Road
    Wakefield, MA 01880
Phone #: <u>781-246-1600</u>   Fax #: <u>781-213-8163</u>

Date: <u>8 / 09 / 10</u>

EMPLOYEE

Jayne Gill

Address: <u>41 Aspen Lane</u>
    <u>Bedford, NH 03110</u>

Phone #: <u>617 467 6604</u>  Fax #: _____

Date: <u>8/5/10</u>

J

From: Dane Groeneveld <Dane.Groeneveld@PTSadvance.com>
Sent: Friday, February 08, 2019 12:52 PM
To: Ken Spigle <KSpigle@eliassen.com>
Cc: JT Mann <JTMann@eliassen.com>
Subject: RE: Letter Regarding Former Eliassen Employee Jayne Gill

Thanks Ken

They do not officially commence employment until the end of the month. But I will be working with my team to set out an appropriate program to manage this.

Kind regards,

**Dane Groeneveld**
CEO

**PTS ADVANCE**
TEAMWORK REIMAGINED

949-268-4021
832-205-0160 Mobile
Dane.Groeneveld@PTSadvance.com
www.linkedin.com/in/danegroeneveld/

PTSadvance.com

**From:** Ken Spigle [mailto:KSpigle@eliassen.com]
**Sent:** Friday, February 08, 2019 9:48 AM
**To:** Dane Groeneveld <Dane.Groeneveld@PTSadvance.com>
**Cc:** JT Mann <JTMann@eliassen.com>
**Subject:** Letter Regarding Former Eliassen Employee Jayne Gill

Dear Mr. Groeneveld:

Enclosed please find a letter from Eliassen Group, LLC's Vice President and General Counsel, Jonathan T. Mann, regarding Eliassen's former employee Jayne Gill, recently hired by PTS Advance.

Please note that this letter, which states that at this time "Eliassen is not aware of any conduct by Ms. Gill which is inconsistent with her obligations" under the terms of her agreement with Eliassen, differs significantly from the letter sent to you yesterday regarding a different former Eliassen employee.

Thank you for your attention in this matter.

Kenneth Spigle


**Kenneth I. Spigle**
Associate Counsel

**Eliassen Group**
55 Walkers Brook Drive, 6th Floor, Reading, MA 01867
T: 781.295.6722 C: 617.504.6843
www.eliassen.com

LinkedIn: ii

2

# K

Case 1:19-cv-10470-GAO   Document 8-1   Filed 03/25/19   Page 86 of 91
PTS Advance Expands Quality, Regulatory & Compliance Consulting Group   age 2 of 4      Page 1 of 3
Case 1:19-cv-10470   Document 1-11   Filed 03/12/19   Page 2 of 4

# PTS Advance Expands Quality, Regulatory & Compliance Consulting Group

## PTS Advance Secures New Managing Director and Account Manager on East Coast



NEWS PROVIDED BY
**PTS Advance** →
Feb 22, 2019, 07:49 ET

IRVINE, Calif., Feb. 22, 2019 /PRNewswire/ -- PTS Advance is excited to announce the appointment of Jayne Gill as Managing Director in our Life Science Division. Gill began her career in the UK in the Royal Air Force before entering into the consulting and recruiting field.  She has a deep understanding of the Life Sciences industry where she has spent 15+ years running strategic consulting projects for global Medical Device, Pharmaceutical and Biotechnology organizations. "It is a truly unique opportunity to join the Leadership Team at PTS Advance and combine my passion, knowledge and network across the Life Sciences industry with the vision and execution track record that Dane Groeneveld and the Stein Family have set in this industry," said Gill.

Case 1:19-cv-10470-GAO   Document 8-1   Filed 03/25/19   Page 87 of 91
PTS Advance Expands Quality, Regulatory & Compliance Consulting Group     Page 2 of 3
Case 1:19-cv-10470   Document 1-11   Filed 03/13/19   Page 3 of 4

Glenn Haegle also joins the PTS Advance team, as the fifth and newest member of the Quality, Regulatory and Compliance Consulting group to be led by Gill. After graduating from The University of Tampa, Haegle has spent the last 10+ years leading business development and customer success in the Consulting and Life Sciences industries. Dane Groeneveld, CEO of PTS Advance commented, "We are continuing to strengthen all aspects of our business and the addition of Jayne and Glenn adds to our ability to deliver advanced levels of service and innovative solutions across the Quality, Validation, Engineering, and Regulatory and Compliance disciplines. Our team can now demonstrate a tremendous understanding of the challenges that come with manufacturing and post market surveillance in FDA regulated environments.  Guiding customers through those challenges allows us to deliver on our core purpose *to advance business through people, and people through business*."

PTS Advance provides staffing, pre-identified candidate management, and full-scope consulting and project solutions. Our team has been responsible for deploying consultants to over 4,500 assignments in the US, and assisting with numerous international assignments on business trips and full relocation.

**More about the PTS Advance Team**

To learn more about the growing life sciences team and services offered, visit us at PTSadvance.com.

Contact:
Dane Groeneveld
949-268-4000
209895@email4pr.com

SOURCE PTS Advance

Related Links

https://www.ptsadvance.com

L

**From:** Dane Groeneveld <Dane.Groeneveld@PTSadvance.com>
**Sent:** Friday, February 22, 2019 3:27 PM
**To:** Ken Spigle <KSpigle@eliassen.com>
**Cc:** Russell Stein <Russell.Stein@PTSadvance.com>
**Subject:** RE: Following up on Jayne Gill and Glenn Haegle

Thanks Ken

We have no intention of them breaking any of the legally binding terms of their agreements, and we have been working on a market plan to ensure that we monitor activity appropriately.

So I do not see any value in spending time and money with lawyers to put anything additional in place.

That said, I will be at the SIA Executive Forum in Austin next week. If any of your executive team would like to meet for breakfast or a coffee, I would me more than happy to discuss any concerns that they have.

Kind regards,

**Dane Groeneveld**
CEO

**PTS ADVANCE**
TEAMWORK REIMAGINED

1

949-268-4021
832-205-0160 Mobile
Dane.Groeneveld@PTSadvance.com
www.linkedin.com/in/danegroeneveld/

**PTSadvance.com**

**From:** Ken Spigle [mailto:KSpigle@eliassen.com]
**Sent:** Friday, February 22, 2019 11:15 AM
**To:** Dane Groeneveld <Dane.Groeneveld@PTSadvance.com>
**Subject:** Following up on Jayne Gill and Glenn Haegle

Dear Dane,

Now that Jayne Gill and Glenn Haegle have commenced their employment with PTS Advance, we would like to discuss putting together written agreements detailing the scope of the restrictions on Ms. Gill's and Mr. Haegle's activities with respect to Eliassen clients, employees, and confidential information.

We would be happy to communicate directly with you, but if you are represented by counsel regarding the issue of Eliassen's concerns about Ms. Gill and/or Mr. Haegle, Massachusetts Rules of Professional Conduct for Lawyers require us to communicate only with your counsel, unless your counsel consents to having us communicate directly with you.

Thank you for your attention in this matter.

Ken Spigle

**Kenneth I. Spigle**
Associate Counsel

**Eliassen Group**
55 Walkers Brook Drive, 6th Floor, Reading, MA 01867
T: 781.295.6722 C: 617.504.6843
www.eliassen.com

LinkedIn:

2